ARTER v. NORTHWESTERN MUT. LIFE INS. CO. OF MILWAUKEE.

(Circuit Court of Appeals, Third Circuit.   June 13, 1904.)

No. 59.

1. LIFE  INSURANCE — POLICIES — APPLICATION—ATTACHMENT—PHOTOGRAPHIC
      COPY.
      A correct photographic copy of an application for life insurance, re-
   duced in size, but legible, attached to the policy, constituted a compli-
   ance with the Pennsylvania laws (Act May 11, 1881, P. L. 20) requiring
   insurance companies to attach a copy of the application to policies where
   such application is referred to and made a part of the policy.

In Error to the Circuit Court of the United States for the Western
District of Pennsylvania.

J. W. Kinnead, for plaintiff in error.
H. A. Miller, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and KIRKPAT-
RICK, District Judge.

DALLAS, Circuit Judge.   This was an action by Lydia B. Arter
(plaintiff in error) against the Northwestern Mutual Life Insurance
Company (defendant in error) to recover upon a policy of insurance
upon the life of her husband, Winfield S. Arter, who died upon De-
cember 27, 1901.   The defense was that within two years from the
date of his application for the insurance he had died by his own hand,
and that, therefore, the company was not liable, because the applica-
tion (which was expressly made a part of the contract) contained the
following agreement:

"It is hereby declared and agreed all the statements and answers written
in this application, marked Part I, as well as those to be made to the Medical
Examiner, marked Part II, are warranted to be true and full and fair an-
swers to the questions and are offered to the company as a consideration for
the Contract of Insurance, which shall not take effect until the first premium
shall have been actually paid during the life of the person herein proposed
for insurance, and while he is in good health.   It is also agreed that if
within two years from the date hereof, I shall pass south of the Tropic of
Cancer, or be personally engaged in blasting, mining or sub-marine opera-
tions, or in the production of highly inflammable or explosive substances, or
in switching or coupling or uncoupling cars, or be employed in any capacity
on the trains of a railroad except as passenger or sleeping car conductor,
mail agent, express messenger or baggage master, or in ocean navigation, or
shall enter or be engaged in any military or naval service (except in time of
peace), without a written permit therefor signed by the President or Secre-
tary of the Company, or shall, within the said two years, either undertake
an aërial voyage, or die in consequence of a duel, or, *whether sane or insane,
die by my own hand*, then, and in every such case, any policy issued on this ap-
plication shall be null and void."

A Pennsylvania statute (Act May 11, 1881, P. L. 20) provides (sec-
tion 1):

"That all life and fire insurance policies upon the lives or property of per-
sons within this commonwealth, whether issued by companies organized un-
der the laws of this state or by foreign companies doing business therein,
which contain any reference to the application of the insured  *  *  *  either
as forming part of the policy or contract between the parties thereto, or hav-

ing any bearing on said contract, shall contain or have attached to said policies correct copies of the application as signed by the applicant, * * * and unless so attached and accompanying the policy no such application * * * shall be received in evidence in any controversy between the parties to or interested in the said policy, nor shall such application or by-laws be considered a part of the policy or contract between such parties."

The only substantial point presented by this record is whether the court below was in error in instructing the jury, with reference to the foregoing statutory provision, that a correct copy of the application was attached to the policy in suit, and in declining to submit that question to the jury. There was in fact a photographic copy attached to the policy, which comparison with the original demonstrates to be a correct one, and the only testimony upon the subject was that it is so. Therefore, if there were nothing more in the case, it would be difficult to assign any rational ground for objection to the action of the court; but the real subject of complaint is, not that the copy is not a correct one, but that it is not legible, and it has been not unreasonably urged that in fairness to the insured the original should not have been so greatly reduced in the reproduction. But the learned trial judge appears to have experienced no difficulty in reading it, and, although it has become somewhat blurred—probably since the trial—we, too, have been able to read it. Under these circumstances there was nothing to be left to the jury. The photographic print was certainly "correct," and, in the absence of any specific designation or description in the statute, we know of no more apt test by which to determine whether it should be regarded as a "copy" than that supplied by Stephen (Dig. of Ev. p. 3) in defining the word "document," which, he says, "means any substance having any matter expressed or described upon it by marks *capable of being read.*"

The judgment of the circuit court is affirmed.

NOTE BY THE COURT. The judgment in this case was determined upon prior to the death of the late Judge Kirkpatrick, and was concurred in by him.