NEW YORK LIFE INSURANCE CO. *v.* HAMBURGER.

1. EQUITY—PLEA—ANSWER SUPPORTING PLEA—REPLICATION.
    To an answer, in support of a plea, denying fraud or combination under oath, and filed in pursuance of Chancery Rule 8*b*, a replication may not be filed.

2. SAME—CANCELLATION OF INSTRUMENTS—FRAUD — REMEDIES IN CHANCERY—INSURANCE.
    A bill in equity for the cancellation of a policy of life insurance lies for fraudulent representations made in the application therefor, and is not subject to objection that there is an adequate remedy at law.

3. INSURANCE—FRAUD—APPLICATION—STATUTES.
    Under Act No. 187, Pub. Acts 1907, subd. 4 (3 How. Stat. [2d Ed.] § 8312), requiring the application to be attached to a policy of insurance as a condition to avoiding it for fraud, it was intended by the legislature to treat innocent misstatements or omissions to answer questions as simply representations, not warranties, and to provide that in no case should fraudulent misrepresentations avoid the contract unless the same were contained in a written application, and a copy of the same indorsed upon or attached to the policy.

4. SAME—CANCELLATION OF INSTRUMENTS.
    A plea of defendant in a suit to cancel a policy of insurance

for fraud was correctly sustained, where it set up the fact that defendant's application was not annexed to his policy pursuant to the statute; defendant must be held to have waived its right to have the application considered as a part of the policy, by failing to attach it to the instrument.

5. Same—Public Policy.

Since public policy is based on the law of the State as found in the statutes, Constitution, or judicial holdings, the contract cannot be considered as against public policy, nor is said act invalid because it effects a waiver of the defense of fraud unless the application is attached by the insurer to the contract of insurance.

Appeal from Wayne; Mandell, J. Submitted January 13, 1913. (Docket No. 42.) Decided March 20, 1913.

Bill by the New York Life Insurance Company against Gussie Hamburger for cancellation of a policy of life insurance. From an order sustaining a plea supported by a sworn answer, complainant appeals. Affirmed.

*Thomas A. E. Weadock,* for complainant.

*Bernard B. Selling,* for defendant.

Kuhn, J. This is an appeal from an order sustaining a plea. The complainant sought to have an insurance policy canceled for fraud claimed to have been practiced in its procurement, and to enjoin defendant from bringing suit against the company thereon. The defendant filed a plea setting up the fact that the policy was issued in the State of Michigan, and that no copy of the application or of any further statements made by the insured, upon which the said policy is alleged to have been issued, was indorsed upon or attached to the policy when issued. A preliminary injunction having been issued, a motion was made to dissolve the same, and a hearing was had and the plea argued. The court announced that he had come to the conclusion that the plea should be allowed, and an order was prepared for his signature. When this order

was presented, the attention of the court was called to Chancery Rule 8*b* by complainant's solicitor, which provides:

"* * * But in every case in which the bill specially charges fraud or combination, a plea to such part must be supported by an answer explicitly denying the fraud and combination and the several facts on which the charge is founded."

Thereupon defendant's counsel asked and obtained leave to file a sworn answer in support of her plea, and, it is claimed, for that purpose only. An order was entered sustaining the plea and permitting the complainant to amend or to take issue upon the plea. The complainant's solicitor thereupon filed a demurrer to the plea, a replication to the answer in support of the plea, and a replication to the amended plea and answer. The three latter pleadings, upon motion and after notice, were stricken from the files.

The question of practice raised is whether the answer filed in support of the plea in conformity with Chancery Rule 8*b* creates an issue to which a replication may be filed. It is claimed that the answer was filed simply for discovery, and does not create such an issue; and with this we are inclined to agree. While the numerous pleadings are somewhat confusing, it seems that the question that was properly raised by the plea and decided by the court, and which is here on appeal, is whether complainant can maintain its bill to have the policy canceled for fraud claimed to arise from fraudulent representations made in the application for insurance or medical examination when the company did not attach to the policy a copy of the application or medical examination.

This action is properly brought in chancery under authority of the holding of this court in *John Hancock Mutual Life Ins. Co.* v. *Dick,* 114 Mich. 337 (72 N. W. 179, 43 L. R. A. 566); *Mactavish* v. *Kent Circuit Judge,* 122 Mich. 242 (80 N. W. 1086); *Fidelity Mutual Life Ins. Co.* v. *Blain,* 144 Mich. 218 (107 N. W. 877).

Act No. 180 of the Public Acts of 1907 (3 How. Stat. [2d Ed.] § 8310) provides in section 1:

"Every policy of insurance issued or delivered within this State on or after the first day of January, nineteen hundred eight, by any life insurance corporation doing business within the State shall contain the entire contract between the parties. And nothing shall be incorporated therein by reference to any constitution, bylaws, rules, application or other writing unless the same are indorsed upon or attached to the policy when issued."

Section 1 of Act No. 187 of the Public Acts of 1907 (3 How. Stat. [2d Ed.] § 8312), provides:

" No policy of life insurance shall be issued in this State, unless the same shall contain the following provisions: * * * Fourth, a provision that all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application and a copy of such application shall be indorsed upon or attached to the policy when issued."

It is the claim of complainant's counsel that the words in subdivision 4, " shall in the absence of fraud,' apply to the whole subdivision, and that, in case no application is attached to the policy, it was not the intent of the legislature to exclude the defense of fraud. It is important, therefore, to ascertain, if possible, the intent of the legislature in using this language. A careful study of the language of the section convinces us that innocent misstatements or omissions to answer on the part of the applicant shall be held to be simply representations; but, in case that fraud can be shown, they shall be held to be warranties. In no case, however, shall the policy be subject to attack unless such statement claimed to be fraudulent is contained in the written application indorsed upon or attached to the policy when issued. It undoubtedly seemed fair to the legislature that the policy holder should have in his possession, during his lifetime, such statements or representations which might be claimed, after his death,

174 Mich.—17.

to have been fraudulent, so that he might know, or could be held to know, what the contract was which he had entered into.

In the case of the *Metropolitan Life Insurance Co.* v. *Freedman*, 159 Mich. 114, 116 (123 N. W. 547, 548 [32 L. R. A. (N. S.) 298]), which was an action to cancel a policy and enjoin prosecution of a suit at law because of claimed false statements made by the insured in his application, this court said:

"In any event, a complete copy of the application (containing the false representations) was set out on the third page of the policy, which was in the possession of either Jacob, the insured, or Louis, his son, from the time it was issued until Jacob died. It was Jacob's duty to know that the representations therein contained, and which constituted the inducement for the issuance of the policy, were true, and his silence during the life of the policy is persuasive proof of a fraudulent intent."

Complainant's solicitor urges that fraud vitiates all contracts, and that any contract which provides for removing the defense of fraud is void as against public policy; and numerous authorities are cited in support of this contention. In the instant case, it is not a question of the contract being against public policy, but rather what the legislature of this State has declared its policy to be. What is public policy? The term has frequently been used in a loose, vague, and inaccurate sense. We may, however, safely say that, when we speak of the public policy of this State, we mean the law of the State, whether found in its Constitution, the statutes, or the judicial records. *People* v. *Hawkins*, 157 N. Y. 1 (51 N. E. 257, 42 L. R. A. 490, 68 Am. St. Rep. 736); 32 Cyc. p. 1251. A statute of the State must be respected unless it is in conflict with the Constitution of the State or the Constitution of the United States. *Whitfield* v. *Insurance Co.*, 205 U. S. 489 (27 Sup. Ct. 578).

The people having spoken through their representatives in the legislature, and having prescribed what an insur-

ance company must do in order to make a defense because of fraud, that requirement being a part of the law, it becomes the public policy of the State. The legislature did not say that the company should not defend for fraud perpetrated in obtaining insurance, but did say that, if the company wishes to make this defense, they must attach the application containing the alleged fraudulent statement to the policy. If the company desires to do business in this State, it must do it subject to such valid and reasonable regulations as the State may determine to prescribe.

The failure of the company to attach the application to the policy must be held as an expression on the part of the company of its purpose to waive or relinquish its right to have the application considered as a part of the contract of insurance. Statutes making similar requirements have been passed in other States, and the following is found in 25 Cyc. p. 746:

"It is provided by statute in several States that, unless a copy of the application be incorporated into or attached to the policy, the company cannot rely upon, or take advantage of, any statements, conditions, or warranties contained in the application. Under such statutory provisions, the application, a copy of which has not been attached to the policy as required, cannot be pleaded or proved in behalf of the company; but, as against the company, the provisions of the application may be pleaded and proved, as the company will not be allowed to take advantage of its own wrong in failing to attach the copy. If the copy attached is not a substantially correct and complete copy of the original application, the statute is not complied with, and the application cannot be relied on by the company." Cases cited in note.

The supreme court of Iowa, in passing on a similar statute in the case of *Rauen* v. *Insurance Co.*, 129 Iowa, 732 (106 N. W. 201, 202), said:

"If we say that the company may disregard this statute and issue its policy without attaching a copy of the application, and still have the right to assert and rely upon such application as a part of the contract, the legislative enactment is reduced to a mere idle form of words, hav-

ing not the least effect upon the rights of parties as they existed before it was passed. It is the duty of the court, whenever it can be consistently done, to so construe a statute as to give it force and effect, and in such manner as to best accomplish the evident intent of the legislature. * * *

" The same objection is also fatal to the plea of false and fraudulent representations made to the applicant's medical examiner, and the demurrer thereto was also properly sustained. The medical examination was part and parcel of the application (Cooley's Briefs on the Law of Insurance, vol. 1, p. 683d), and no copy thereof was attached to the policy; and, for the reasons already stated, defendant was not entitled to avail itself of any defense on account of matters contained therein. * * *

" It may be admitted, for the purposes of this case, that the fraud pleaded was sufficient to avoid the policy if the appellant had put itself in position to make use of the defense; but, failing to attach a copy of the application to the policy, it waived its right to take issue upon the application or any part of it. * * *

" In no State where any such statute is found, whether accompanied or unaccompanied by an express provision excluding proof of false representation of warranty not contained in or attached to the policy, have we been able to find a decision or suggestion by any court that a company, failing to attach or embody the application in its policy when required by statute, may make such omitted matter a basis of defense to an action on the contract. On the other hand, in every State where occasion has arisen to consider it, the holding has been to the contrary. *Insurance Co.* v. *Bank*, 48 Kan. 393 (29 Pac. 576); *Insurance Co.* v. *Bank*, 48 Kan. 397 (29 Pac. 578); *National Life Ass'n* v. *Berkeley*, 97 Va. 571 (34 S. E. 469).

" As we have already suggested, it is within the power of the legislature not only to impose conditions upon the right of insurance corporations to do business in the State, but to regulate the form and substance of all insurance contracts, and prescribe what conditions may or may not be imposed upon the insured. When, therefore, it is enacted that all representations and warranties upon which the company proposes to rely or insist shall be attached to or embodied in the policy, the State is not exceeding its recognized authority, and the company, failing to comply with the provision, must be conclusively held to have elect-

ed to rely upon the contract as contained in such policy, without reference to any representation or warranty not contained in that instrument. The denial of the right to plead or prove such extrinsic matter is not in any proper sense a 'penalty' for failing to comply with the statute, for the company has a perfect right to waive or forego any advantage it could derive from an embodiment of the application in the policy. It issues its policy with the statute in view; and, failing to do that which, by the terms of the statute, is necessary to allow the application to have 'any bearing' on the rights of the parties, the contract stands as if the omitted writings never existed."

See, also, *Considine* v. *Insurance Co.*, 165 Mass. 462 (43 N. E. 201); *Nugent* v. *Life Association*, 172 Mass. 278 (52 N. E. 440); *Reagan* v. *Insurance Co.*, 207 Mass. 79 (92 N. E. 1025).

It is strongly urged that this construction will open the door to all kinds of fraud. However, the company can readily avoid this possibility by annexing the application to its policy, in accordance with the plain intent of the statute.

Even if, in the opinion of the court, this statute might be considered unwise from the standpoint of the public interests, nevertheless, unless it conflicts with the Constitution of the State or of the United States, the legislative determination is final.

The judge of the court below arrived at the proper conclusion, and the order he made is affirmed, with costs.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.