EASTMAN *v.* METROPOLITAN LIFE INSURANCE CO.

1. INSURANCE—PHOTOGRAPHIC COPY OF APPLICATION—LEGIBILITY— COMPLIANCE WITH STATUTE.

    Where the testimony as to whether a photographic copy of an application for life insurance was legible, and therefore in compliance with 2 Comp. Laws 1915, § 9360, was in direct conflict, a question of fact for the jury was presented.

2. TRIAL—DISPUTED QUESTION ONE FOR JURY.

    The court may not declare a fact established as a matter of law where the evidence is such that reasonable men might come to different conclusions as to the existence of the fact.

3. INSURANCE—LEGIBILITY OF PHOTOGRAPHIC COPY OF APPLICATION TEST.

    The test as to whether said photographic copy was legible and in compliance with said statute was properly stated by the court to be "whether it may be read by a person of normal eyesight under normal conditions and with reasonable ease."

4. EVIDENCE—EXPERT TESTIMONY ADMISSIBLE.

    Expert testimony was admissible on the question as to whether a photographic copy of an application for life insurance could be read by a person of normal eyesight under normal conditions and with reasonable ease.

Error to Chippewa; Fead (Louis H.), J.    Submitted June 10, 1924.    (Docket No. 21.)    Decided July 24, 1924.

Assumpsit by Minnie Eastman, guardian of Delmas J. Eastman and Lloyd W. Eastman, minors, against the Metropolitan Life Insurance Company on a policy of insurance.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Davidson & Hudson,* for appellant.

*Albert E. Sharpe,* for appellee.

BIRD, J.   This action was instituted to recover on a policy of insurance for $1,500, issued by defendant in March, 1922, on the life of James H. Eastman. On September of the same year Mr. Eastman died. Proofs of death were delivered to defendant company, but it refused to pay the loss, on the ground of fraud. It charged in its defense that the insured misrepresented the state of his health in his application for the insurance.   The policy was introduced in evidence, and with it was a photographic copy of the application of about two-thirds the size of the original application. Referring to the size of the type used in the photographic copy, counsel says:

"Long primer is the size of type in which most law books are printed.   The editorial page of most newspapers is printed in long primer.   The news columns are generally in brevier.   Legal advertisements are some times printed in nonpareil.   But this photographic reproduction of the application is still smaller than nonpareil, and the white lettering on the dark background makes it still more difficult."

It is plaintiff's contention that the photographic copy of the application attached to the policy does not comply with 2 Comp. Laws 1915, § 9360, and, therefore, the defense of fraud is not admissible.   The statute referred to provides that:

"All statements made by the assured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid the policy unless it is contained in a written application and a copy of such application shall be endorsed upon or attached to the policy when issued."

It is argued that this provision of the statute con-

templates a readable copy, one that is legible, and that the one in question does not measure up to this requirement, in that it cannot be read by the normal eye, under normal conditions, with reasonable ease. It is further said that inasmuch as defendant denied this contention it presented a question of fact for the jury. Defendant takes the position that the photographic copy is a substantial compliance with the statute, but argues, if the matter be in doubt, it is a question for the court and not for the jury. The trial court held that the question was one of fact, and submitted it to the jury. They found that the copy was not a legible copy, and, therefore, returned a verdict for plaintiff.

1. Plaintiff insisted upon the trial that the defense of fraud was not admissible because defendant had not complied with the provision of the statute quoted. The reason assigned was its failure to attach to the policy a readable copy of the application. Plaintiff asserted and showed by an eye expert that the printing on the photographic copy of the application was so diminutive that the normal eye could not read it under normal conditions with reasonable ease. Defendant produced an eye expert who testified it could be read by the normal eye under good light. Defendant produced other testimony tending to show it was a legible copy to the normal eye. Under these respective contentions and the evidence introduced to support them, was it the duty of the court or of the jury to determine the question? This is the principal question raised for our consideration. We think the testimony clearly raised a question of fact. If defendant's witnesses were believed the photographic copy of the application was legible to the normal eye. If plaintiff's testimony were believed then it was not legible to the normal eye. But defendant's counsel argue that if in doubt it was

a question for the court, to be determined from a comparison of both application and photographic copy. We do not agree with this contention. The proofs on the question of legibility of the photographic copy were in direct conflict. It was a question about which reasonable minds might differ, or might draw different inferences. Such questions are questions of fact for the jury.

It has been held that if there is any evidence from which the jury might justifiably find the existence of a fact in issue, the issue should be submitted to them for determination. Accordingly, if the evidence is conflicting, the issue is for the jury to determine. Nor can the court declare a fact established as a matter of law where the evidence is such that reasonable men might come to different conclusions as to the existence of the fact. 24 Cyc. p. 1230.

Suppose the question in issue was the genuineness of the signature to a promissory note and the parties had in court the genuine signature with which to make comparison with the disputed one. Would it be a question for the court to determine? The courts have held otherwise. *Magee* v. *Osborn,* 32 N. Y. 669; *Ayrhart* v. *Wilhelmy,* 135 Iowa, 290 (112 N. W. 782).

Or suppose the question was whether certain erasures and alterations had been made in the answers in the application for insurance. It would likewise be a question of fact for the jury. In both of these instances the proofs lie upon the face of the record, as in the present case, and must be determined from an inspection thereof. But it does not follow that because the proofs lie upon the face of the record that the court must make a determination of the question if different inferences can be drawn therefrom.

The question involved here is not one of construction of the language of the application, it is a question whether you can see the language with the normal

eye.    That question does not involve any legal skill. The proofs being in direct conflict as to whether the normal eye could read the photographic copy under normal conditions with reasonable ease, it was a question of fact for the jury.

2. The test which the court laid down by which the jury was to determine whether the copy was legible was "whether it may be read by a person of normal eyesight under normal conditions and with reasonable ease."    We think this was a proper test and, undoubtedly, one which was contemplated by the legislature when the act was passed.    It would be idle for the legislature to prescribe a notice to be posted that could not be read by the normal eye under normal conditions.    In the present case the provision that a copy of the application should be attached to the policy was inserted for a purpose, and that purpose was to enable the insured to know at all times just what representations he had made to obtain the insurance (*New York Life Ins. Co.* v. *Hamberger,* 174 Mich. 254), and thereby lessen the controversies which were continually arising after the death of the insured over claimed fraudulent representations made by him to obtain the insurance.

3. Objection was made to the admission of expert testimony.    The question involves the normal eye, and the ordinary layman has not such information on the normal eye that he could well pass on the question without the aid of expert knowledge.    Or, in other words, he could pass on it more intelligently with the aid of expert knowledge.    We think it was permissible.    Two cases are cited and discussed in the briefs. *Arter* v. *Insurance Co.,* 65 C. C. A. 156, 130 Fed. 768; *Fidelity Mut. Ins. Co.* v. *Preuser,* 195 Ky. 271 (242 S. W. 608).    They are helpful but not very decisive of the question considered here.    In the first case cited the copy was so plain that it raised no question

228—Mich.—9.

of doubt. The second case was determined upon demurrer.

The judgment of the trial court is affirmed.

CLARK, C. J., and MCDONALD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred. SHARPE, J., did not sit.