NEW YORK LIFE INS. CO. v. MILLER.
No. 9918.

Circuit Court of Appeals, Eighth Circuit.
Oct. 25, 1934.

Clifford V. Cox and Donald Evans, both of Des Moines, Iowa (Wm. F. Riley and John Inghram, both of Des Moines, Iowa, on the brief), for appellant.

L. H. Salinger, of Carroll, Iowa (Edward A. Wissler and Salinger, Reynolds & Meyers, all of Carroll, Iowa, on the brief), for appellee.

Before BOOTH, Circuit Judge, and MUNGER and BELL, District Judges.

MUNGER, District Judge.

The appellee had a verdict and judgment against the appellant in an action upon two policies of insurance. The parties will be referred to as they appeared in the trial court. The defendant's answer alleged that the assured had obtained the policies by making, knowingly, false representations, consisting of untrue answers to questions propounded to him in his written application for the policies and the same facts were also alleged in a cross-bill, with allegations that upon discovery of the falseness of the representations the defendant had tendered to plaintiff the premiums which it had collected and had notified her that it had elected to rescind the policies. The prayer asked for a decree of rescission of the policies and for general relief. In her replication to the cross-bill, the plaintiff admitted that the assured had made the answers to the questions, as alleged, but denied their falsity and materiality, and denied that the policy was issued in reliance upon them. It also alleged that the defendant had an adequate remedy at law. When the case was first reached for trial, the defendant moved that the case be set for trial before the court on the equitable issues tendered for trial in the cross-bill. This motion was overruled, and an exception noted. Thereafter a jury was impaneled in the case and following this the plaintiff was given leave to amend her replication, and in her amendment the plaintiff alleged, in substance, that the copies of the application which were attached to the policies, when the policies were delivered to the assured, were not copies, because illegible. It does not appear that a verdict was reached by the jury at that time, but, one year later, a trial was had to a jury, resulting in the verdict and judgment mentioned.

It is assigned as error that the court overruled the defendant's motion asking for a trial of the equitable issues set forth in the cross-bill before the trial of the legal issues. The trial court held that the defendant had an adequate remedy at law. The appellant's claim that this was erroneous finds support in the case of New York Life Ins. Co. v. Marotta (C. C. A.) 57 F.(2d) 1038, 1039. In that case it appeared that an action at law had been brought to recover upon two life insurance policies, after the death of the insured. The defendant's answer alleged that the policies were procured by means of false and fraudulent answers given by the insured to questions propounded to him in his application for the insurance, and prayed for a rescission and cancellation of the policies. The trial court made an order dismissing the equitable defenses because the defendant had an adequate remedy at law, but this order was reversed by the Court of Appeals. The reason for the reversal was stated in this language:

"There is a clearly marked difference in the elements of proof necessary to support fraud as a defense to an action at law, and fraud as a ground for the equitable relief of rescission and cancellation. This distinction the court did not appear to recognize. No misrepresentation is fraudulent at law, unless it is made with actual knowledge of its falsity, or under such circumstances that the law must necessarily impute such knowledge to the party, at the time when he makes it; but the courts have clearly and repeatedly recognized that there may be actual fraud in equity, without any feature of moral culpability.

"The person making an untrue statement without knowing or believing it to be untrue, and without any intent to deceive, may be chargeable with actual fraud in equity. Of course, whatever would be fraudulent at law is fraudulent in equity; but the equitable doctrine goes further, and includes instances of fraudulent misrepresentation which do not exist at law. At law there must be a showing, not only of the falsity of the allegation, but also knowledge by the applicant of such falsity. As a general rule, courts of equity may grant relief by way of rescission, abatement, or otherwise, although no fraudulent intent on the part of the person making the representation is shown, and even though he may be honestly misled as a result of misapprehension or mistake. All that need be shown in such case is that the representations were false, and actually misled the person to whom they were made. A very large number of cases sustaining these distinctions are set forth in the appellant's brief, and need not be cited here. These authorities sustain the distinction which exists between fraud at law and fraud in equity so clearly as to remove

the question beyond the domain of controversy. While it pretty clearly appears from the record that a number of the material questions answered by the applicant were untrue, under all the circumstances, there being a conflict of evidence, we think the court was right in submitting the question to the jury as to the existence or nonexistence of legal fraud; particularly as to whether or not the applicant was suffering from, and had been treated for, gout, and, if so, whether he had knowledge of the fact that he was treated for that disease. But that is only a portion of the case. Either prior to the submission of the case to the jury, or afterwards, under the pleadings, it was the duty of the court to find the facts upon which the equitable defenses were based, and, if the findings showed that the applicant's answers were untrue and material, it was the duty of the court to apply to those facts the equitable principle that such false representations were fraudulent, and entitled the defendant to a rescission of the policies, even though the applicant believed the answers to be true when he made them."

In Derry v. Peek, 14 App. Cases, 337, 359, Lord Herschell stated the distinction in the elements of proof between actions at law for deceit, and suits in equity for rescission, as follows:

"This action is one which is commonly called an action of deceit, a mere common law action. This is the description of it given by Cotton, L. J. in delivering judgment. I think it important that it should be borne in mind that such an action differs essentially from one brought to obtain rescission of a contract on the ground of misrepresentation of a material fact. The principles which govern the two actions differ widely. Where rescission is claimed it is only necessary to prove that there was misrepresentation; then, however honestly it may have been made, however free from blame the person who made it, the contract, having been obtained by misrepresentation, cannot stand. In an action of deceit, on the contrary, it is not enough to establish misrepresentation alone; it is conceded on all hands that something more must be proved to cast liability upon the defendant, though it has been a matter of controversy what additional elements are requisite. I lay stress upon this because observations made by learned judges in actions for rescission have been cited and much relied upon at the bar by counsel for the respondent. Care must obviously be observed in applying the language used in relation to such actions to an action of deceit."

In McFerran v. Taylor, 3 Cranch, 270, 281, 2 L. Ed. 436, which was a suit for specific performance, Chief Justice Marshall said:

"He who sells property on a description given by himself, is bound to make good that description; and if it be untrue in a material point, although the variance be occasioned by a mistake, he must still remain liable for that variance."

The case of Smith v. Richards, 13 Pet. 26, 36, 10 L. Ed. 42, was a suit for rescission of a contract to purchase a tract of land, upon which was a gold mine, upon the ground, alleged by the purchaser as the plaintiff, that he had been induced to make the contract by false representations of the seller. The court said:

"It is an ancient and well-established principle, that whenever suppressio veri or suggestio falsi occur, and more especially both together, they afford a sufficient ground to set aside any release or conveyance. This ancient principle, thus expressed with so much sententious brevity, is laid down in terms somewhat more comprehensive, and having a direct bearing on the present case, by a modern text-writer on equity. In 1 Madd. Chan. 208, it is thus stated: If, indeed, a man, upon a treaty for any contract, make a false representation, whether knowingly or not, by means of which he puts the party bargaining under a mistake upon the terms of bargain, it is a fraud, and relievable in equity. The doctrine thus laid down is almost in the very words used by the chancellor, in the case of Neville v. Wilkinson, 1 Bro. C. C. 546, with the exception of the words, whether knowingly or not; and the part of the proposition embraced by these words, is founded upon the case of Ainslie v. Medlycott, 9 Ves. 21, which fully sustains Mr. Maddock. In this latter case, the following strong language is used: 'No doubt, by a representation, a party may bind himself just as much as by an express covenant. If, knowingly, he represents what is not true, no doubt, he is bound. If, without knowing that it is not true, he takes upon himself to make a representation to another, upon the faith of which that other acts no doubt he is bound; though his mistake was perfectly innocent.'

"But the doctrine is laid down with more comprehensiveness and precision by a still more modern writer on equity; who gives

us, in the form of distinct propositions, what he considers the result of the various cases on the subject, and marks, with particularity, the modifications which belong to it. In 1 Story's Equity, 201, 202, it is thus stated: 'Where the party, intentionally, or by design, misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him; in every such case, there is a positive fraud, in the truest sense of the terms; there is an evil act, with an evil intent; dolum malum, ad circumveniendum. And the misrepresentation may be as well by deeds or acts, as by words; by artifices to mislead, as by positive assertions.' Whether the party thus misrepresenting a fact, knew it to be false, or made the assertion, without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know, or believe to be true, is equally, in morals and law, as unjustifiable, as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a fact, by mistake, it is equally conclusive; for it operates as a surprise and imposition on the other party. Or, as Lord Thurlow expresses it, in Nevill v. Wilkinson, 'it misleads the parties contracting, on the subject of the contract.' "

The principle stated in these cases that it is immaterial in an equitable suit for rescission or cancellation of a contract, whether the false representation inducing its execution was made with knowledge of its falsity or was made with an honest belief that it was true, has been stated in many decisions in the courts of the United States. Doggett v. Emerson, Fed. Cas. No. 3,960, 3 Story, 700, 733; In re American Knit Goods Mfg. Co. (C. C. A.) 173 F. 480, 482; Grant v. Giuffrida, 50 App. D. C. 28, 267 F. 330, 332; New York Life Ins. Co. v. Marotta (C. C. A.) 57 F.(2d) 1038, 1039; Kell v. Trenchard (C. C. A.) 142 F. 16, 23; Halsey v. Minnesota-South Carolina Land & Timber Co. (C. C. A.) 28 F.(2d) 720, 723; Franco v. New York Life Ins. Co. (C. C. A.) 53 F. (2d) 562, 565; Hindman v. First Nat. Bank (C. C. A.) 112 F. 931, 944, 57 L. R. A. 108; Joslyn v. Cadillac Automobile Co. (C. C. A.) 177 F. 863, 867; Independent Harvester Co. v. Tinsman (C. C. A.) 253 F. 935, 937; Herschberger v. Woodrow-Parker Co. (C. C. A.) 275 F. 908, 916; Billings v. Aspen Mining & Smelting Co. (C. C. A.) 51 F. 338, 347; Kimber v. Young (C. C. A.) 137 F. 744, 747; City of Omaha v. Venner (C. C. A.) 243 F. 107, 113; Fay v. Hill (C.

C. A.) 249 F. 415, 419; Woods-Faulkner & Co. v. Michelson (C. C. A.) 63 F.(2d) 569, 572. See, also, Hare & Chase v. National Surety Co. (D. C.) 49 F.(2d) 447, 454; Pittsburgh Life & Trust Co. v. Northern Cent. Life Ins. Co. (C. C.) 140 F. 888, 892; Benton v. Ward (C. C.) 47 F. 253, 256; Burroughs Add. Mach. Co. v. Scandinavian-American Bank (D. C.) 239 F. 179, 183.

In the case of Phoenix Mut. Life Ins. Co. v. Bailey, 13 Wall. 616, 622, 20 L. Ed. 501, the insurance company, after the death of the assured, had filed a bill asking for the cancellation of two policies of insurance which it had issued upon the life of Albert Bailey. The bill alleged that the policies had been procured by the suppression of material facts and by fraudulent misrepresentations. In affirming a dismissal of the bill the court said:

"Whether the remedy sought in this case would have been available if the suit had been instituted before the death of the person whose life was insured it is not necessary to determine, as no such question is involved in the record. Suffice it to say upon that topic that the complainant has not referred the court to any decided case which supports the affirmative even of that inquiry, but the difficulty in the way to such a conclusion in the case before the court is much greater, as by the death of the cestui que vie the obligation to pay, as expressed in the policies, became fixed and absolute, subject only to the condition to give notice and furnish proof of that event within ninety days. Notice having been given and the required proof furnished, the obligation to pay certainly became fixed by the terms of the policies and the sums insured became a purely legal demand, and if so, it is difficult to see what remedy, more nearly perfect and complete, the appellants can have than is afforded them by their right to make defence at law, which secures to them the right of trial by jury. Foley v. Hill, 2 House of Lords Cases, 45; Thrale v. Ross, 3 Brown's Chancery Cases, 56; Arundel v. Holmes, 4 Beav. 325; Norris v. Day, 4 Young & Collyer, 475.

"Where a party, if his theory of the controversy is correct, has a good defence at law to 'a purely legal demand,' he should be left to that means of defence, as he has no occasion to resort to a court of equity for relief, unless he is prepared to allege and prove some special circumstances to show that he may suffer irreparable injury if he is denied a preventive remedy. Nothing of the kind is

to be apprehended in this case, as the contracts, embodied in the policies, are to pay *certain definite sums* of money, and the record shows that an action at law has been commenced by the insured to recover the amounts, and that the action is now pending in the court whose decree is under re-examination.

"Courts of equity unquestionably have jurisdiction of fraud, misrepresentation, and fraudulent suppression of material facts in matters of contract, but where the cause of action is 'a purely legal demand,' and nothing appears to show that the defence at law may not be as perfect and complete as in equity, a suit in equity will not be sustained in a Federal court, as it is clear that the case, under such circumstances, is controlled by the sixteenth section of the Judiciary Act [see 28 USCA § 384]."

In the case of Cable v. United States Life Insurance Company, 191 U. S. 288, 24 S. Ct. 74, 77, 48 L. Ed. 188, the insurance company had brought suit in the United States court seeking cancellation of a policy of life insurance which it had issued on the life of Herman D. Cable, alleging that the policy had been procured by fraud and by false representations. Before that suit was filed, an action had been begun in the state court, by the beneficiary in the policy, asking for a recovery upon the policy. The bill alleged the lack of an adequate remedy at law, in that a removal of the action on the policy was impracticable, because an Illinois statute declared that a removal of such a case would forfeit the company's right to transact business in Illinois; and alleged that the laws of Illinois, as interpreted by the state courts, were less favorable, on the facts of the case, than the laws applied in the United States courts. In its decision the Supreme Court stated that the plaintiff's bill had alleged that the policy was procured by the fraud and fraudulent representations of the agents of the assured, and dismissed the question of the adequacy of any remedy at law, referring to the decision in the Bailey Case as controlling. The court said:

"We start with the proposition that, to any action brought upon the policy in a Federal court, the company would have a complete and adequate defense by proving the fraud as alleged in the bill herein. That shows a defense in the same jurisdiction resorted to by the complainant herein. It is answered, however, that the action has not been commenced in the Federal court, but, on the contrary, the administratrix has commenced her action in the state court, and hence the defense, if made in the state court, is not in the same jurisdiction as that in which the bill in this case was filed. But the company may bring its defense within the same jurisdiction by removing the case from the state to the Federal court, which it has the right to do on account of the diversity of citizenship of the parties thereto. No stipulation or agreement, founded on a state statute or otherwise, which the company may have entered into, could prevent the removal of the case in the exercise of its constitutional right. This has been so held in Home Ins. Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365; and that case has been repeatedly approved. See Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148; Barron v. Burnside, 121 U. S. 186, 7 S. Ct. 931, 30 L. Ed. 915, 1 Inters. Com. Rep. 295. * * *

"One thing is entirely clear, that the company could have removed this case from the state to the Federal court, notwithstanding the state statute or anything contained in its application for a license to do business within the state. Upon removal the company would have the full and adequate defense, under the law as administered by the Federal courts, that it would have in the equity case."

In the decision the court referred approvingly to the cases of Home Ins. Co. v. Stanchfield, Fed. Cas. No. 6,660, 1 Dill. 424, and Aetna Life Ins. Co. v. Smith (C. C.) 73 F. 318, in each of which the court had declared that bills to cancel insurance policies on the ground of false representations could not be maintained because the remedy at law was adequate, when the bill was filed after a loss had occurred under the policy.

Before the decision in the Marotta Case, it had been held, in cases which cited the Bailey and Cable Cases that an insurance company ordinarily had an adequate remedy at law, by setting up its defense in an answer alleging that the policy had been procured by false representations, when an action had been begun against it on the policy, after a loss had occurred under the policy. Continental Casualty Co. v. Yerxa (D. C.) 16 F.(2d) 473, 474; New York Life Ins. Co. v. Marshall (C. C. A.) 23 F.(2d) 225; New York Life Ins. Co. v. Feicht (D. C.) 29 F. (2d) 318, 320; New York Life Ins. Co. v. Seymour (C. C. A.) 45 F.(2d) 47, 48, 73 A. L. R. 1523; Riggs v. Union Life Ins. Co. (C. C. A.) 129 F. 207, 208.

■ The right to maintain an equitable action to rescind or cancel a contract of insurance, because of false representations made by the assured to induce its execution, where there is no adequate remedy at law, is well recognized. Riggs v. Union Life Ins. Co. (C. C. A.) 129 F. 207, 208; Jefferson Standard Life Ins. Co. v. Keeton (C. C. A.) 292 F. 53, 54; Jefferson Standard Life Ins. Co. v. McIntyre (C. C. A.) 294 F. 886, 888; Jones v. Reliance Life Ins. Co. (C. C. A.) 11 F.(2d) 69, 70; Peake v. Lincoln Nat. Life Ins. Co. (C. C. A.) 15 F.(2d) 303, 305; Keystone Dairy Co. v. New York Life Ins. Co. (C. C. A.) 19 F.(2d) 68, 69; New York Life Ins. Co. v. McCarthy (C. C. A.) 22 F.(2d) 241, 245; Adler v. New York Life Ins. Co. (C. C. A.) 33 F.(2d) 827; New York Life Ins. Co. v. Hurt (C. C. A.) 35 F.(2d) 92, 96; Lincoln Nat. Life Ins. Co. v. Hammer (C. C. A.) 41 F.(2d) 12, 16, 17; Equitable Life Assur. Soc. of U. S. v. Schwartz (C. C. A.) 42 F.(2d) 646, 648; New York Life Ins. Co. v. Seymour (C. C. A.) 45 F.(2d) 47, 48, 73 A. L. R. 1523; Brown v. Pacific Mut. Life Ins. Co. (C. C. A.) 62 F.(2d) 711, 712; Phillips-Morefield v. Southern States Life Ins. Co. (C. C. A.) 66 F.(2d) 29, 30; Penn. Mut. Life Ins. Co. v. Joseph (D. C.) 5 F. Supp. 1003, 1006; Massachusetts Protective Ass'n v. Stephenson (D. C.) 5 F. Supp. 586, 590.

The right to maintain such a suit, as illustrated by the cases cited, often arises from the fact that a defense at law in an action on the policy may be lost to the insurer, because of the uncertainty when a loss may occur, the danger that witnesses may disappear, or because the policy will become incontestable after a limited period unless such a suit is begun by the insurer.

■ If an insurer is entitled to ask the equitable relief of rescission or cancellation of a policy which it has issued, on the ground that it was procured by fraudulent representations of the insured, solely because the elements of proof in such a suit differ from the elements of proof in making the defense in an action on the policy, it is needless in any case to bring suit for that relief before the incontestable period has expired, or before a loss has occurred, or to show that essential testimony may be lost, or to show that any other special circumstances exist, and the insurer would be entitled to make such an equitable defense in every case, where suit was brought upon a policy. While the exact question was not discussed in the Bailey or Cable Cases, or in the cases which have followed those decisions, it must be presumed that the courts were aware of the essential elements of the suits for rescission or cancellation of instruments as contrasted with the elements of a defense at law. While recognizing the force of the reasoning in the Marotta Case, on the authority of the decisions in the Bailey and Cable Cases and the cases which have cited and followed them, we are constrained to hold that it was not erroneous for the trial court to refuse a trial of the alleged equitable issues, because of the nature of the proofs required of the defendant in making a defense in the law action, and there being neither allegation or proof that the policies were issued as the result of mistake. The policies in suit by their terms were incontestable after two years from the date of issue, except for nonpayment of premiums, and except as to provisions for disability and double indemnity benefits. This action was begun, and the defendant's answer and cross-bill were filed before the two-year period had expired. The defendant having thus instituted a contest of the policy within the time limited, was not entitled to the equitable relief asked because of the possibility that the plaintiff might dismiss her action and begin a new one on the policies after the two-year period had expired. New York Life Ins. Co. v. Hurt (C. C. A.) 35 F.(2d) 92, 96; Powell v. Mutual Life Ins. Co., 313 Ill. 161, 170, 144 N. E. 825, 36 A. L. R. 1239.

■ Complaint is made that the court should have sustained the defendant's motion for a directed verdict. The court submitted the case to the jury with instructions to find for the defendant company if the jury found that the copies of the applications attached to the policies were legible copies, such that a person with undefective eyes and normal vision could read with a fair degree of certainty. Section 8772 of the Code of Iowa (1931), in force at the time this insurance was written, required that a company issuing a life insurance policy should attach or indorse thereon a true copy of any application or representation of the assured, which by the terms of the policy were made a part of it, or of the contract of insurance, or referred to therein, or which might in any manner affect the validity of the policy, and section 8773 of the Code provided that if any insurance company neglected to comply with the requirements of the preceding section, it should be

precluded from pleading, alleging, or proving such application or representations or any part thereof, or the falsity thereof, or any part thereof in any action upon such policy.

Appellant claims that a verdict for the defendant should have been directed because it was undisputed that a true copy of the original application was attached to the policies delivered to the assured, and that it could be read by a person with undefective eyes and normal vision.

The record shows that the original application made by the assured was identified and offered and received in evidence. This exhibit is not preserved in the record on this appeal. The original policies delivered to the assured, with the copies of the applications attached, are presented by the record. We are precluded by this condition of the record from a comparison, available to the court below, of the contents of the original application with the contents of the alleged copies delivered to the assured. The parts of the original policies, alleged to be copies of the original application, appear to be photographic reproductions of an application signed by the assured. The questions, and some other portions of it are in printed form, while the answers, and the purported signature of the assured and of the medical officer are in handwriting. A large part of the answers can barely be read by means of a strong magnifying glass owing to the small size and dimness of the letters. The missing exhibit, the original application, may have demonstrated that it was printed and written on sheets of larger size, and with larger printed and written words, legible to any ordinary reader. It is obvious, from a casual inspection of the policies, that a large portion of the papers attached as copies of the application were not capable of being read by persons of normal vision, without the aid of some magnifying instrument. As to the further claim that the statute is obeyed, if the copy of the original application attached to a policy and delivered to the assured is a true copy of its contents, regardless of its legibility, this would not be the test, if the original is plainly printed and written, in letters of fair size and easily legible, while the copy furnished is so reduced in size, or so dim or blurred that it can be read by persons of normal vision only by the use of strong magnifying glasses. Fidelity Mut. Ins. Co. v. Preuser, 195 Ky. 271, 274, 242 S. W. 608; Arter v. Northwestern Mut. Life Ins. Co. (C. C. A.)

130 F. 768, 769. There was no error in overruling the defendant's motion for an instructed verdict.

Other errors assigned challenge that part of the instructions of the court by which he told the jury that a true copy of the original application must be a legible copy, such as a person with undefective eyes and normal vision could discern the writing upon and could read with a fair degree of certainty. The only ground of exception taken to this portion of the instructions was that the test of compliance with the statute was not whether the copy could be read, but whether it was a true copy, and that the portion of the charge defining the person who would be the judge of the ability to read the true copy was immaterial. In Eastman v. Metropolitan Life Ins. Co., 228 Mich. 125, 129, 199 N. W. 655, 656, the court said in discussing a similar statute:

"The test which the court laid down by which the jury was to determine whether the copy was legible was 'whether it may be read by a person of normal eyesight under normal conditions and with reasonable ease.' We think this was a proper test and, undoubtedly, one which was contemplated by the Legislature when the act was passed. It would be idle for the Legislature to prescribe a notice to be posted that could not be read by the normal eye under normal conditions. In the present case the provision that a copy of the application should be attached to the policy was inserted for a purpose, and that purpose was to enable the insured to know at all times just what representations he had made to obtain the insurance (New York Life Ins. Co. v. Hamburger, 174 Mich. 254, 140 N. W. 510), and thereby lessen the controversies which were continually arising after the death of the insured over claimed fraudulent representations made by him to obtain the insurance."

In Janunas v. Metropolitan Life Ins. Co., 239 Mich. 150, 153, 214 N. W. 117, 118, it was said in a similar case:

"Whether the reduced size photographic copy of the application attached to the policy serves the purpose of the statute involves the question of whether it can be read by a normal eye, under normal conditions, with reasonable ease. If it cannot be read by a normal eye, under normal conditions, with reasonable ease, then to hold it a compliance would render the statute meaningless."

We think these cases express the true rule applicable in this case, and that there ap-

pears to be no error in the giving of the instruction of which the appellant may complain. These are all of the errors assigned that present any substantial question for review, and therefore the judgment will be affirmed.