CAMDEN FIRE INS. ASS'N v. DI GIOVANNI et al.

No. 10062.

Circuit Court of Appeals, Eighth Circuit.

Feb. 14, 1935.

Rehearing Denied March 18, 1935.

Walter A. Raymond, of Kansas City, Mo. (Hume & Raymond and Fenton Hume, all of Kansas City, Mo., on the brief), for appellant.

James Daleo, of Kansas City, Mo., for appellees.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is a suit in equity brought by appellant, Camden Fire Insurance Association, seeking the cancellation of two fire insurance policies. Appellees, defendants below, are husband and wife. One of the insurance policies involved is for $3,000, and covers a two-story brick building owned by both defendants, while the other policy is for $1,500, and covers personal property owned solely by the defendant Pete Di Giovanni, and both the policies insure against loss and damage by fire.

After alleging the issuance of these policies, it is alleged in the bill of complaint that at about the same time defendants procured a policy of fire insurance in the Eureka Security Fire & Marine Insurance Company upon this same building for $2,500, and one from the St. Louis Fire & Marine Insurance Company for $2,500, and one from the Old Colony Insurance Company for $5,000; also that they procured additional insurance upon the contents of the building, one policy from the Eureka Security Fire & Marine Insurance Company for $1,000, and one policy from the Old Colony Insurance Company for $3,200; that shortly after procuring these policies, and on the 13th of June, 1933, a fire occurred in the building; that all of the policies were procured from different agencies; that the plaintiff had no knowledge of the issuance of the other policies until after the fire; that the building was of a value not to exceed $6,000. It is then alleged that: "All of the aforesaid policies were procured by respondents as a part of a general scheme and plan to defraud this complainant and the other insurance companies named, and that in furtherance of said plan, the said respondents by and through their servants and agents, caused the said property to be set fire to on said date; that the said respondents procured insurance far in excess of the value of the building and its contents from different agencies, as a part of their general plan and scheme to defraud this said complainant and the other insurance companies, and in order that the respondents might set fire to the property and collect an exorbitant price for the building and its contents; that the said respondents represented to certain of the companies hereinbefore named, and to this complainant that they would not procure in excess of Five Thousand ($5,000.00) Dollars insurance on said building and that they would not procure in excess of Three Thousand Two Hundred ($3,200.00) Dollars insurance upon the contents; that the procurement by the respondents of the aforesaid policies and all of them, from different agencies, was done by the said respondents for the purpose of misleading complainant and the other insurance companies named, and as a part of the general scheme and plan of respondents to burn their property and collect a large sum of money; that immediately following this fire, complainant began an investigation of said fire loss, and has ascertained the facts hereinbefore set forth."

It is then alleged that defendants have filed proof of loss against all of said insurance companies, claiming the total loss, although the loss was not total, and they have threatened to sue complainant upon the two policies issued, to recover the face amount of the policies; that complainant has denied liability, after tendering the premiums paid, together with interest thereon; that it is the intention of defendants to use these policies as a means of consummating their fraudulent scheme, and that unless restrained they will institute two actions at law against complainant on these two policies;

that title to the real estate stands in the name of Pete Di Giovanni and Mary Di Giovanni, husband and wife, as an estate by the entirety. Complainant prays for a decree declaring the policies void, and restraining the defendants from instituting suits thereon, and for a delivery of the policies to complainant upon the payment of the premiums and interest.

To this complaint, defendants filed a motion to dismiss on the ground that the court had no jurisdiction, that the bill did not state facts sufficient to constitute a cause of action in equity against defendants, either severally or jointly, and that it appeared from the bill that complainant was not entitled to any relief. This motion was sustained, and from the judgment of dismissal entered, the plaintiff prosecutes this appeal.

■ Appellees insist that the lower court was without jurisdiction, and, hence, properly dismissed the bill of complaint, because the matter in controversy does not exceed the value of $3,000. 28 USCA § 41. Neither of the policies sought to be canceled exceeds the amount of $3,000, and the policy covering the contents of the building was issued to defendant Pete Di Giovanni, although both defendants are alleged to have acted jointly and pursuant to their general scheme and plan to defraud plaintiff in securing same. The general rule is that jurisdiction cannot be conferred upon the federal court by joining claims against distinct and separate defendants, no one of which equals the jurisdictional amount. First State Bank v. Chicago, R. I. & P. R. Co. (C. C. A. 8) 63 F.(2d) 585, 90 A. L. R. 544, and cases there cited. But it is contended by appellant that the claims which the defendants threatened to assert against it are so tied together, by reason of the alleged conspiracy and concerted design, as to entitle it to aggregate these claims for the purpose of maintaining this suit in equity in the federal court.

■ The complaint charges a concerted design and purpose on the part of the defendants to defraud the plaintiff and other insurance companies, by taking out an exorbitant amount of insurance and then deliberately destroying the property for the purpose of creating apparent liability on the part of the plaintiff in the nature of claims for loss by fire, and both these policies were secured through the concerted action of defendants. We think the allegation of fraudulent combination and concerted design and action constituted a conspiracy which tied together

the claims and made the aggregate of the claims the matter in dispute. Sovereign Camp, Woodmen of the World v. O'Neill, 266 U. S. 292, 45 S. Ct. 49, 50, 69 L. Ed. 293; McDaniel v. Traylor, 212 U. S. 428, 29 S. Ct. 343, 53 L. Ed. 584; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; First State Bank v. Chicago, R. I. & P. R. Co. (C. C. A. 8) 63 F.(2d) 585, 588, 90 A. L. R. 544; Premier Malt Products Co. v. G. A. Ackerman Printing Co. (C. C. A. 7) 24 F.(2d) 89; Western Real Estate Trustees v. Hughes (C. C. A. 8) 172 F. 206; United States v. Charpentier (C. C. A. 2) 54 F.(2d) 361; Rogers v. Virginia-Carolina Chemical Co. (C. C. A. 3) 149 F. 1; Fernandina Shipbuilding & Dry Dock Co. v. Peters (D. C.) 283 F. 621; Mitchell Woodbury Corp. v. Albert Pick Barth Co. (C. C. A. 1) 41 F. (2d) 148.

In Sovereign Camp, Woodmen of the World v. O'Neill, supra, suit was brought in equity against twenty-five individuals, charging them with entering into a conspiracy to have themselves elected delegates to a session of the Sovereign Camp of the Woodmen of the World, where it was decided they had not been legally elected; that pursuant to said agreement they instituted twenty-five different suits in a local court in Texas to recover amounts ranging from $987 to $1,170, as per diem and mileage for attending at the Sovereign Camp. An injunction was asked against the defendants. They moved to dismiss the bill on the ground that the amount involved was not sufficient to give jurisdiction based solely on diversity of citizenship. In denying this contention, the court, speaking through Mr. Justice Sanford, said: "We find that under the allegations of the present bill the case comes fairly within the reason of the exception recognized in the McDaniel Cases [196 U. S. 415, 25 S. Ct. 369, 49 L. Ed. 533; 212 U. S. 428, 29 S. Ct. 343, 53 L. Ed. 584]. It is not only alleged that the defendants' claims are without foundation, but that they originated and are being prosecuted in the state court in pursuance of an agreement and conspiracy to embarrass and attempt to ruin the Society. There is no dispute as to the amount of any particular claim; and the validity of all of them depends upon the same issue. A conspiracy to prosecute, by concert of action, numerous baseless claims against the same person for the wrongful purpose of harassing and ruining him, partakes of the nature of a fraudulent conspiracy; and in a suit to enjoin them from being separately prosecuted, it must likewise

be deemed to tie together such several claims as one claim for jurisdictional purposes, making their aggregate amount the value of the matter in controversy."

■ In the instant case, as the court dismissed the bill on motion, we must accept all the well-pleaded allegations of the bill of complaint as true.

In First State Bank v. Chicago, R. I. & P. R. Co., supra, this court, in an opinion by the late Judge Kenyon, said: "Plaintiff is asking for a determination of the validity of these fourteen claims and relief from the expense and vexation of having to defend a multiplicity of suits. The action is to cancel, not one of the bills of lading, but all of them. The necessary result of the litigation, were plaintiff successful, would be to cancel a claimed indebtedness of $31,400. That is the amount in dispute and in controversy between appellant and appellee in this case. We are satisfied the requisite jurisdictional amount exists."

So, in the instant case, plaintiff is seeking to cancel these policies on which, should the defendants successfully maintain actions at law, they will recover $4,500, and in the circumstances of this case, the allegations of the bill of complaint being admitted, we think that is the amount in dispute and in controversy between the parties.

■ The right to maintain an equitable suit to rescind and cancel a contract of insurance because of fraud in securing its execution is well settled by a wealth of authority. New York Life Insurance Co. v. Miller (C. C. A. 8) 73 F.(2d) 350, and cases there cited.

■ But it is urged that the plaintiff has a plain, adequate, and complete remedy at law, in that the defense of fraud is available to it in any actions at law that may be brought upon these policies, and there is undoubtedly authority sustaining this contention in the abstract; in fact, we have so held in New York Life Insurance Co. v. Miller, supra. See, also, Enelow v. New York Life Ins. Co., 55 S. Ct. 310, 79 L. Ed. ——. There are, however, additional circumstances in the present case which may distinguish it from the authorities cited. In the first place, in this case there is a charge of conspiracy, and

there are at least two of these policies, so that it would require at least two actions at law and materially increase plaintiff's expenditures in litigation, whereas, the matter, if cognizable in equity, can be disposed of in one suit.

■ But there is still a further answer to this contention. The adequate remedy at law which will prevent the maintenance of a suit in equity in the federal court is a remedy at law available in the federal court. Henrietta Mills v. Rutherford County, 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737; Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819; Risty v. Chicago, R. I. & P. R. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641; Munn v. Des Moines Nat. Bank (C. C. A. 8) 18 F.(2d) 269; Chicago & N. W. R. Co. v. Railroad and Warehouse Commission (D. C.) 280 F. 387.

■ Considered as law actions, the claims of the defendants are separate, and the amount in controversy cannot be aggregated, so that the plaintiff can secure no remedy at law in the federal trial court, nor indeed, would an appeal lie from the ultimate decision of the State Supreme Court to the Supreme Court of the United States, because there is no federal question involved, and the parties are private parties.

It must be borne in mind too that there is here no question involving an interference with the officers of a state in attempting to enforce state revenue laws, nor can it be urged that plaintiff should be required to pursue some legislative remedies, and this, we think, distinguishes this case from the doctrine of Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, and Porter v. Investors' Syndicate, 286 U. S. 461, 52 S. Ct. 617, 76 L. Ed. 1226.

Plaintiff, being free to seek its remedy in the federal court, has a right to insist that the remedy at law which will preclude its right to maintain this suit in equity shall be a remedy in the federal court. It follows that the court was in error in concluding that it did not have jurisdiction, and the judgment appealed from is therefore reversed, and the cause is remanded for further proceedings consistent herewith.