194 So. 156.

**JEFFERSON STANDARD LIFE INS. CO. v. BOMCHEL.**

6 Div. 487.

Supreme Court of Alabama.

Jan. 11, 1940.

Rehearing Denied March 7, 1940.

Hugh A. Locke and Frank M. James, both of Birmingham, for appellant.

Leader, Hill, Tenenbaum & Seedman, of Birmingham, for appellee.

FOSTER, Justice.

The primary question argued on this appeal is whether section 8365, Code, applies to contracts for the reinstatement of life insurance policies, which are in themselves complete policies in every respect, and, if so, to what extent in respect to that here involved. That is what is known as the incontestable feature of the insurance law, often also set out in the contract of insurance.

The statute makes it incontestable for fraud or irregularities in the application, after two annual premiums have been paid on the policy.

The policy in the instant case also provides for incontestability after it has been in force during the life of the insured for two full years from its date. It was made an exhibit to the complaint.

The question is here presented by assignments of error which relate to the judgment sustaining demurrer to pleas 6 and 7, respectively, to count 3 of the complaint. Count 3 set out the substituted policy. It claimed for the amount due on it, dated March 10, 1936, alleging that insured died March 3, 1938. It then alleges:

"Plaintiff further avers that on, to-wit, the 10th day of August, 1935, defendant issued to Bomchel a policy of insurance, numbered 547,702 under the terms of which it was expressly provided in part as follows: 'Should this policy cease and determine for non-payment of any premium, it may be re-

instated at any time within five years by furnishing evidence of insurability satisfactory to the company, and the payment of the defaulting premiums, with interest at the rate of six per cent per annum added.'

"Plaintiff further avers that said policy, numbered 547,702, lapsed by reason of non payment of premium due November 10, 1936.

"Plaintiff further avers that on, to-wit, January 27, 1937, defendant stated to Bomchel in writing as follows: 'In your interest we urgently recommend that you apply for reinstatement of this policy. We shall be glad to consider reinstatement upon receipt of the enclosed health certificate executed in part 1, and your check for $14.85 covering the quarterly premium, and we will be glad to submit it to the home office for their consideration.'

"Plaintiff further avers that said policy No. 547,702 provided, in part, as follows: 'In lieu of the premium stated, the company will accept semi-annual installments of $29.-09, or quarterly installments of $14.70, but the payment of any such installment shall not continue this policy in force beyond the month of grace allowed for payment of the next installment.'

"Plaintiff further avers that said policy No. 547,702 further provided in part for cash or loan values, paid up endowment insurance and guaranteed surrender values after the payment of three annual premiums.

"Plaintiff further avers that on, to-wit, the 12th day of June, 1937, Ben Bomchel made application to the defendant company for reinstatement of lapsed policy No. 547,-702, in amount twenty-five hundred ($2,-500.00) dollars, and plaintiff further avers that thereafter, on, to-wit, June 24, 1937, he was informed and notified in writing by the defendant company, as follows:

" 'Re Policy No. 616–232–Bomchel.

" 'We are pleased to enclose the above numbered policy which is a reinstatement and reissue of policy No. 547,702, for $2,-500.00, your application for reinstatement and reissue having been approved by our home office.

" 'The new policy is written on the ordinary life form, non participating, on a quarterly premium payment basis, at a premium of $15.73. Inasmuch as you have already paid one year and one quarter on the old policy, we have dated the new policy March 10, 1936, and have used your payment in settlement of the quarterly premium due June 10, 1937, and our official receipt for this is attached hereto. The next quarterly premium will be due September 10, 1937.'

"Plaintiff further avers that said quarterly premium due September 10, 1937, was paid within the time required by said defendant company and thereafter the next quarterly premium due December 10, 1937 was paid within the time required by the defendant company, which premiums were payable and paid in advance.

"Plaintiff further avers that defendant company issued policy No. 616,232 in lieu of reinstatement of policy No. 547,702 and dated the new policy March 10, 1936, in consideration of the one year and one quarterly premium paid on the old policy; and plaintiff further avers that the credits on the policy sued on for the payment of premiums, together with the subsequent premiums paid by the assured, constitute the payment of two annual premiums made on said policy No. 616,232."

Plea 6 is based upon misrepresentation in the application for reinstatement of the old policy which lapsed on November 10, 1936. The application for reinstatement is alleged in this plea to have been made on June 12, 1937, and in it "he was asked to give the 'name and address of your (his) family physician,' and in response to said question he said, 'Do not have one, have not seen a doctor in six years.' Defendant alleges that said statement was untrue in that the said Ben Bomchel was a patient at the National Jewish Hospital, in Denver, Colorado, from to-wit: May 18, 1930, to to-wit: November 14, 1931, during which time he was treated for pulmonary tuberculosis, and that in said hospital, and during said period of time, he was examined and attended by physicians. Defendant further alleges that in said application the said Ben Bomchel expressly made an application dated the 20 day of June 1935, and part of the above described application and a part of the said policy No. 616232, the subject matter of this suit, and that in said application dated the 20 day of June 1935 the said Ben Bomchel was asked the following question: '12. Have you ever suffered from any ailment or disease of (B) the heart, lungs, pleurae, or chest?' and that in answer to said question the said Ben Bomchel said, 'No.' Defendant alleges that said representation was made subsequent to the time when he had spent approximately 18 months in the said tuberculosis sanitorium,

as above alleged. Defendant alleges that said misrepresentations of fact were made with intent to deceive or that they increased the defendant's risk of loss under the policy. Defendant therefore alleges that the said policy, the subject of this suit, is void for fraud."

The plea then shows that insured died in two years after the reinstated policy was dated. It does not allege that defendant did not know of the falsity of such alleged representations, nor that defendant was misled by them.

Plea 7 alleges that as a part of the contract of insurance, insured agreed as follows: .

" 'If any of the statements of representation contained herein shall prove to be incomplete or untrue, then this reinstatement shall be ipso facto, null and void.'

"Defendant alleges that the following question and answer were expressly agreed to be a part of said contract of insurance, namely:

" '8th. Name and address of your family physician?'

"Answer: 'Do not have one, have not seen a doctor in six years.'

"Defendant further alleges that the following question and answer were expressly agreed to be a part of said contract of insurance, namely: Question:

" '12. Have you ever suffered from any ailment or disease of (B) heart, lungs, pleurae, or chest?'

"Answer: 'No.'

"Defendant further alleges that both of said statements, or representations, were untrue in that the said Bomchel was a patient in the National Jewish Hospital, of Denver, Colorado, from to-wit: May 18, 1930, to to-wit: November 14, 1931, for treatment for pulmonary tuberculosis, which is a disease of the lungs."

■ We agree with appellant's contention that though the reinstatement of a lapsed policy is ordinarily a continuation of the original contract, yet if there was fraud or breach of warranty in effecting the reinstatement, defendant would not be barred of his right to make that defense because two years had elapsed after the date of the original contract. The theory on which this is based is well stated in New York Life Ins. Co. v. Ellis, 27 Ala.App. 113, 168 So. 200, certiorari denied 232 Ala. 378, 168 So. 203, and need not be repeated. See on that subject Tatum v. Guardian Life Ins. Co., 2 Cir., 75 F.2d 476, 98 A.L.R. 341; MacDonald v. Metropolitan Life Ins. Co., 304 Pa. 213, 155 A. 491, 77 A.L.R. 353; and notes, 31 A.L.R. 114, 85 A.L.R. 239; Mutual Life Ins. Co. v. Dreeben, D.C., 20 F.2d 394; New York Life Ins. Co. v. Seymour, 6 Cir., 45 F.2d 47, 73 A.L.R. 1523; Wallach v. Aetna Life Ins. Co., 2 Cir., 78 F.2d 647.

■ What effect then do the statute and policy provisions have on the reinstatement contract of insurance? As here set up, it is a new contract in the form of a new policy, not a mere reinstatement agreement. So that by it there is a new contract made, and in form and substance it is a complete policy of insurance. It supersedes the old. It is as said in Mutual Life Ins. Co. v. Lovejoy, 203 Ala. 452(4), 83 So. 591, to be within the right of the parties to contract for and make a new policy, even though different from the old. The new one is a complete policy in all its details, and bears a different number from the old. The suit is on it, as we have said, and a copy of it is attached as the contract sued on. It is quite true that as a rule a mere reinstatement is but a continuance of the old policy, when such reinstatement is effectual and not avoidable for fraud or breach of warranty. Whether or not section 8365, Code, limits the period in which a mere reinstatement contract may be avoided for fraud, it is certainly a limitation when a new policy contract is substituted for the old. It is a policy of insurance as defined in that statute. Moreover, the new policy contains an incontestable clause.

In Sovereign Camp, W. O. W. v. Nall, 236 Ala. 474, 183 So. 637, we were considering the question of whether section 8506, Code, prohibits such a defense after the lapse of two years when insured died within two years. We incidently referred to our case of Modern Order of Praetorians v. Wilkins, 220 Ala. 382, 125 So. 396, wherein we said that the statute, section 8507, brings fraternal insurance within the same rules as govern regular life insurance contracts, citing there sections 8364 and 8365.

Section 8365, applicable to regular life contracts, makes the time when incontestability shall begin when two annual premium payments have been made on the policy. Section 8506 makes it begin as to fraternal insurance "after the same has been in force for two years."

We observed in the Nall case, supra, that we saw no reason to assume that the legislature meant to make a different rule for the

two classes of insurance. That was not an authoritative statement as to the meaning of section 8365, and not necessary to the question under consideration.

Appellee cites the case of New York Life Ins. Co. v. Truesdale, 4 Cir., 79 F.2d 481, as opposed to this view. And so it seems to be, construing a South Carolina statute and decisions. He also refers to the fact that as originally enacted, and as it appears in the Code of 1896, § 2597, the limit was after three annual premium payments had been made on the policy. This was changed to "two" such payments by the Code Commission of 1906, and brought forward without change to the Code of 1923. There has been no specific interpretation other than as stated in the Nall and Watkins cases, supra.

On February 17, 1919, p. 118, an Act was passed making the incontestable period begin after the policy has been in force for two years applicable to fraternal insurance. This is now section 8506, Code, referred to in the Nall and Wilkins cases, supra.

The question is whether the legislature intended to fix a period which may be only one year as to regular life insurance contracts, and two years as to fraternal insurance. If the two annual premium payments are the initial payment and that due on the first anniversary of the policy, the policy-holder could by making them by the date of the second anniversary fix one year as the period of contestability. Or, suppose the time is strung out by the consent of both parties over a period of two years before they are both paid, then by literal interpretation the period would extend for two years instead of one year. Or suppose the two are paid in advance when the policy is issued.

In this case appellee contends that the new policy being dated March 10, 1936, though not effective until June 10, 1937, the annual premium payments due March 10, 1936, and March 10, 1937, were paid in quarterly installments, and that the final amount of the second payment was made December 10, 1937. And this is the status of the form in which the transaction occurred. And if this were the substance of the situation, we would have directly presented the meaning of section 8365. For insured died after December 10, 1937, and before two years expired from the date of the policy.

But we will undertake to show we think that for the purpose of this computation the period should be reckoned from June 10, 1937, as the date for the payment of the initial annual premium. It was paid in quarterly sums, June 10th, September 10th and December 10th, 1937, but it required a payment of March 10, 1938 to complete that annual payment on that basis.

We have had occasion to consider the effect of antedating a policy in two of our cases, Higgins v. Sovereign Camp, W. O. W., 224 Ala. 644, 141 So. 562, and Mutual Life Ins. Co. v. Barrett, 215 Ala. 142, 110 So. 275, 276. In the first of those cases, we were construing the terms of the contract so as to ascertain the method of computing withdrawal values. Considering it in all its features and the nature of withdrawal values, we thought the date from which they should be computed was that set out as the date of the policy, though it was antedated. In the latter case we were considering the terms of the policy which exempted the insurer from liability on account of the suicide of insured for a period of one year "after the date of issue of this policy." The opinion emphasized the fact that it would be difficult to state a plausible reason "to hold that the stipulated period of defendant's exemption from liability on account of suicide began before its liability as an insurer."

In the instant case, the complaint shows that a letter to plaintiff was sent by defendant with the policy, which made the following explanation as to why it was antedated: "Inasmuch as you have already paid one year and one quarter *on the old policy* (we supply emphasis) we have dated the new policy March 10, 1936, and have used your payment in settlement of the quarterly premium due June 10, 1937. Your next quarterly premium will be due September 10, 1937."

It is thus made plain that the amount of the premium thus paid for one year and one quarter had been paid on the old policy. The first quarterly installment on the new policy was actually paid as of June 10, 1937.

The view we take of the situation is that the period of contestability on account of a misrepresentation or warranty dates from the time when it was made and acted on, and not some fictitious date in the past. We are supported by the following cases: Mutual Life Ins. Co. v. Dreeben, supra; New York Life Ins. Co. v. Seymour, supra; Tatum v. Guardian Life Ins. Co., supra; Wallach v. Aetna Life Ins. Co., supra.

The application for reinstatement and its contents were all made pursuant to the reinstatement provisions in the old pol-

icy requiring satisfactory evidence of insurability. It therefore anticipated action by the company on account of its representations, and if it was materially false and induced action by the company, or if there was a breach of warranty in that connection, the misrepresentation and breach would be a good defense if sufficiently pleaded. Sovereign Camp, W. O. W. v. Perry, 237 Ala. 567, 187 So. 727; Reliance Life Ins. Co. v. Sneed, 217 Ala. 669 (5 to 9), 117 So. 307.

 Plea 6 undertakes to allege a false statement in answer to a question as to the name and address of his family physician, when he says, not in direct response, that he had not seen a doctor in six years, which the plea alleges was untrue in that from May 10, 1930 to November 14, 1931, he was treated in a hospital for pulmonary tuberculosis. And that his answer of "no" was false to the question of whether he had suffered from an ailment of the lungs. This last question and answer were made in the application for the old policy, and made part of the new one. The plea did not say that he had suffered from such an ailment, but had been treated for it by his physicians.

The false representation related to occurrences prior to the issuance of the old policy, and to his insurability at that time. After the lapse, he had a right under the terms of the policy to reinstatement on satisfactory evidence of his then insurability. The questions were asked and answers were made in an application in which the questions called for information occurring since his examination for the old policy. The statement that he had not seen a doctor in six years was not in response to a question calling for such an answer. The application, which is a part of the policy made an exhibit to the complaint, does not call for information covering a period of time as to which the company had already satisfied itself. It is not contended that these answers were false insofar as they related to the time extending from the date of the old policy. Attaching the old application to the new one did not serve, we think, to apprise insured of a purpose to inquire again into the facts on which the old one was based, to be used as a basis for fraud or foundation for a warranty.

Plea 7 is subject to the same comment.

While both pleas allege that the representation and warranties were false, and purport to state in what respect they were so, as they should, in doing so their falsity appears principally by inference.

In pleading a necessary matter of fact, a pleader cannot merely allege evidential facts from which such matter may be inferred, but not a necessary inference. Plea 6 alleges that he was treated by a physician; but plea 7 does not even state that. Neither of them alleges that he had the ailment for which he was treated. He could very well have been treated for an ailment he did not have.

There was no error in sustaining the demurrer.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.