**NEW YORK LIFE INS. CO. v. SEYMOUR et al.**

**No. 5439.**

Circuit Court of Appeals, Sixth Circuit.

Nov. 18, 1930.

A. D. Baldwin, of Cleveland, Ohio (Wm. McE. Weldon, of Mansfield, Ohio, Garfield, Cross, MacGregor, Daoust & Baldwin, of Cleveland, Ohio, on the brief), for appellant.

L. H. Beam, of Mansfield, Ohio, and H. A. Beckett, of Cleveland, Ohio (W. F. Voegele, of Mansfield, Ohio, and Cannon, Spieth, Taggart, Spring & Annat, of Cleveland, Ohio, on the brief), for appellees.

Before DENISON and MACK, Circuit Judges, and RAYMOND, District Judge.

DENISON, Circuit Judge.

Seymour had a life insurance policy in the appellant company, issued in 1919. It contained the now common clause, by which, after two years, it should be incontestable except for nonpayment of premium. Early in 1928 it lapsed, for such nonpayment. Shortly thereafter, Seymour applied for its reinstatement under that clause of the policy which provided:

"Reinstatement.—At any time within five years after any default, upon written application by the Insured and upon presentation at the Home Office of evidence of insurability satisfactory to the Company, this Policy may be reinstated together with any indebtedness in accordance with the loan provisions of the Policy, upon payment of loan interest, and of arrears of premiums with five per cent interest thereon from their due date."

This application says that "for the purpose of inducing the company to reinstate said policy, I make the representations contained in my answers to the following questions:" These answers expressly stated that he was in the same condition of health as when the policy was issued, and that within the then past two years he had not had any illness, and had not consulted or been treated by any physician. The application concluded: "I hereby certify that the foregoing answers are full, complete and true, and agree that the Company, believing them to be true, shall rely and act thereon." The reinstatement was effective as of February 14, 1928. Seymour died about sixty days later. The insurance company claimed that the two representations above specified were false and fraudulent; and thereupon filed this bill in the court below against Seymour's widow, who was beneficiary in the policy, asking that the policy be declared invalid because the reinstatement was procured by fraud, and praying that the policy be delivered up and canceled. Upon motion of the defendant, the bill was dismissed because there was an adequate remedy at law. In connection with the motion to dismiss, it was stated, and the court below accepted it as a fact, that after the filing of the bill, the beneficiary brought an action on this policy in the state court of Ohio, and that this action had been removed by the insurance company to the court below.

Upon the authority of Phoenix Mut. L. Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501, and Cable v. Insurance Co., 191 U. S. 289, 24 S. Ct. 74, 48 L. Ed. 188, it must be held that, except for the presence of the incontestable clause in such policy, a court of equity would not have the right to assume and try the issue whether the policy was fraudulently procured. The opinions in these cases are rested mainly upon the plaintiff's right to try before a jury such a question of fraud. In the Bailey Case the fact that the remedy by the defense at law was under the control of the opposite party, and so might not be thought adequate, was not discussed in the opinion; but it was expressly said that there might be instances where, for peculiar reasons, equity would nevertheless have jurisdiction. The substance of the decision in the Cable Case is that the peculiar reasons there relied upon to get within the exception in the Bailey Case were not sufficient. Those circumstances were all, save one, immaterial here. The one was that the power of the other party, the plaintiff, to discontinue made the remedy by defense too contingent to be "adequate". This point was necessarily overruled (page 309 of 191 U. S., 24 S. Ct. 74, 78), as it was ruled by the Bailey Case. These Supreme Court opinions have established the law on that subject; and it must be accepted as the basis of decision in that type of case.

■ The policy involved in the Bailey Case did not have the incontestable clause; and, however long the beneficiary delayed the suit at law, the assured's fraud in the application continued to be a good defense, which, if shown, would defeat the action. Manifestly, with the incontestable clause, the situation is different; the beneficiary has only to wait until the specified time expires; and, to the suit then brought, the defense is not available. This presents a situation within the exception of the Bailey Case, and gives equity the right to take hold. So the C. C. A. of the Fourth Circuit held (by majority, in Jefferson v. Keeton, 292 F. 53),[1] and we agree. The dissenting opinion of Judge Woods is urged upon us as presenting the sounder view; but we think not. With all deference, the Bailey Case seems to us to push to the limit the denial of an established ground of equitable jurisdiction, and the denial should be carried no further. When the principle upon which a decision depends is absent from a later case, the earlier one ceases to be controlling. Incidentally, it may be noted that the Bailey Case was decided before it had been developed that the "contest" which would bar the limitation must be by a pleading in a law suit. Rose v. Mutual Co. (C. C. A. 6) 19 F. (2d) 280. If it had been then assumed that the insurance company could make the contest by a notice and demand, and thus fix its right and satisfy the limitation, it would be easier to think of its remedy as "adequate"; but under the Rose Case the company can never make the defense unless its adversary moves. Unless limited by some state statute, the right of a plaintiff to take a voluntary nonsuit in a suit at law is absolute; the court cannot examine his motives. In the ordinary case at law, there is no established practice by which a defendant setting up a legal defense—or probably even an equitable one—can hold the suit in court against the plaintiff's wish. Hence a beneficiary under such an incontestable policy may commence a suit at law to which the defendant, within the limitation period, may plead fraud in the procuring of the policy, and may thereby institute a "contest"; but after this pleading, and after the limitation period expires, the plaintiff may dismiss the suit, and the next day commence another one against which this defense may not be available. To say that, under those circumstances, there is adequate defense at law, seems to us clearly wrong. The comment in the Cable Case (page 309 of 191 U. S., 24 S. Ct. 74, 78), to the effect that the right to discontinue was not important, referred to the ordinary situation, where a discontinuance left defendant in full possession of his defense.[2]

■ The further specific question is as to the applicability of the incontestable clause to the reinstatement. There is nothing expressed on this subject in the policy or in the reinstatement papers. Clearly the original clause, with the original two-year limitation, cannot be literally reinstated in a case like this. It had performed its office, and this policy had been incontestable for several

---

[1] See Jefferson Co. v. McIntyre (C. C. A. 5) 294 F. 886, 889; Lincoln Co. v. Peake (D. C. Mo.) 10 F.(2d) 366, affirmed (C. C. A. 8) 15 F.(2d) 303; Jones v. Reliance Co. (C. C. A. 4) 11 F.(2d) 69; N. Y. Life v. Renault (D. C. N. J.) 11 F.(2d) 281; Philadelphia Co. v. Burgess (D. C. S. C.) 18 F.(2d) 599; Keystone v. N. Y. Life (C. C. A. 3) 19 F.(2d) 68; Mutual Life v. Dreeben (D. C. Tex.) 20 F.(2d) 394; Abraham Lincoln Co. v. Kleven (D. C. Mass.) 33 F.(2d) 688; N. Y. Life v. Jensen (D. C. Neb.) 38 F.(2d) 524; Lincoln Co. v. Hammer (C. C. A. 8) 41 F.(2d) 12, 17.

[2] It is suggested that a discontinuance could be prevented if the insurance company in its answer to the suit at law should plead the fraud and [under 274b of the Judicial Code, 28 USCA § 398] ask the equitable relief of surrender and cancellation, thus barring a discontinuance. It is not clear that one may rightly ask, by answer at law, equitable relief which equity would not give him upon his own bill.

years before the lapse. Both by the proposal of the reinstatement application and by familiar principles of law, it must follow that fraud in obtaining the reinstatement would be a good defense to liability upon the contract so procured; and there must be a reasonable opportunity for the assertion of this defense. Nor, when we draw the conventional inference against the party drafting the contract, can we think it intended that the policy should be always contestable—without any time limit. We think the fair construction is that the incontestable clause took a fresh effect when the policy again came into force by the reinstatement, and that the right to contest because of fraud in the reinstatement would expire two years after that date. This conclusion cannot rest upon any precise language in the policy; but it is the reasonable inference as to what the parties intended by reinstating a policy containing this clause, and also providing, in effect, that liability should be defeated by showing fraud in the reinstatement application. This is held in Tector v. United Life, 159 N. Y. 411, 54 N. E. 72, approved in Great Western v. Snavely (C. C. A.) 206 F. 20, 46 L. R. A. (N. S.) 1056; Mutual Life v. Dreeben (D. C.) 20 F.(2d) 394.

There remains the inquiry whether such a situation should require a court of equity to entertain such a bill, not to hear and decide the issue of fraud, but merely to furnish an anchor to windward while the litigation at law continues; and so that if the right to make the defense at law should be actually lost, then the court of equity might interfere. Something of this kind was done in Hoare v. Bremridge, L. R. 8, Ch. App. 22 (1812). Such a procedure cannot be satisfactory. If the law proceeding is in the same court which has equitable jurisdiction (or in two branches of the same court, as in the English case), the incidental difficulties are minimized; but that would very often not be the case. The equity suit might be in the federal court and the suit at law in the state court, or vice versa. The two courts might otherwise differ in jurisdiction. A suit at law could be brought in one court, discontinued and brought in another, and, very likely, later in still another. The exercise of the jurisdiction of the equity court would not only be intermittent and evanescent, but would require it to supervise another court in an unknown way and for an unknown time.[3] The only case found in the United States tending to support the English case is Crenshaw v. Looker, 185 Mo. 375, 389, 84 S. W. 885, and the facts there make it inapplicable here. The contrary is expressly held or is implied in several of the cases, cited in Note 1.

Thinking, as we do, that in the present case the court of equity acquired jurisdiction of the controversy when the bill was filed, it would be enough to say that the jurisdiction rightfully so acquired is not lost because a suit at law is later commenced. Equity jurisdiction is not lost if, after the filing of the bill, an adequate legal remedy becomes available (Dawson v. Kentucky, 255 U. S. 288, 296, 41 S. Ct. 272, 65 L. Ed. 638), nor if the right to any equitable relief disappears (Clark v. Wooster, 119 U. S. 322, 7 S. Ct. 217, 30 L. Ed. 392). See also Liberty Co. v. Condon Bank, 260 U. S. 235, 244, 43 S. Ct. 118, 67 L. Ed. 232. However, we are not satisfied to rest the result on such fortuitous priority. The principles of jurisdiction involved lead, we think, to the conclusion that, under this type of incontestable policy, and while the right to make this defense at law remains subject to the control of the other party, a court of equity has the right to accept, hear, and decide the issue whether the policy was fraudulently procured; and the plaintiff, having invoked a jurisdiction which was ample, and was not discretionary but absolute, has a right to have that jurisdiction exercised, rather than abdicated or suspended. Cf. McClellan v. Carland, 217 U. S. 268, 281, 30 S. Ct. 501, 54 L. Ed. 762.

The decree is reversed, and the case remanded for further proceedings consistent herewith.

MACK, Circuit Judge, dissents to the extent of thinking that the equity suit should be suspended until the suit at law can be tried.

---

[3] A "nurse maid jurisdiction"—Professor Chafee.