OCCIDENTAL LIFE INS. CO. OF CAL-IFORNIA v. KIELHORN.

No. 1674.

United States District Court
W. D. Michigan, S. D.
June 12, 1951.

Uhl, Bryant, Slawson & Wheeler and Gordon B. Wheeler, all of Grand Rapids, Mich., for plaintiff.

Linsey, Shivel, Phelps & Vander Wal and R. M. Shivel, all of Grand Rapids, Mich., for defendant.

STARR, District Judge.

On May 6, 1949, the plaintiff company issued two insurance policies on the life of Walter P. Kielhorn in which the insured's wife, Evelyn J. Kielhorn, defendant herein, was designated as beneficiary. The insured was killed May 5, 1950, in the crash

of his private airplane, and the beneficiary filed death claims under the policies. The company denied liability and tendered the premiums that had been paid and interest thereon to the beneficiary, who refused the tender.

On November 24, 1950, the plaintiff company filed complaint in the present equity action, alleging in substance that the insured had procured these policies by making false and fraudulent representations in his application therefor. It asked that the policies be rescinded and canceled and that the defendant as beneficiary be enjoined from instituting any suit thereon. The defendant filed a motion to dismiss the complaint, but without prejudice to the plaintiff's right to assert its claim of fraud and misrepresentation in defense of any law action on the policies by the beneficiary as plaintiff. This motion is based on the following grounds: (1) That the sole issue between the parties is whether or not the plaintiff insurer is liable on the policies; (2) that the issue is basically legal in its nature; (3) that the plaintiff has a complete and adequate remedy at law in that it could assert its claim of fraud and misrepresentation in procuring the policies in defense of any law action by the beneficiary; and (4) that the plaintiff instituted the present suit to deprive the defendant of her right to have her case tried in an action at law and to deprive her of her right to a jury trial.

The precise question presented by the defendant's motion is whether the plaintiff is entitled to maintain the present equity action for cancellation of the policies, or whether the defendant is entitled to have it dismissed in order that she may institute an action at law on the policies and have a jury trial of the issues involved. In considering this question it is important to note the incontestable provision which appears in each of the policies, reading in part as follows: "This policy shall be incontestable after it has been in force *during the lifetime of the Insured* for a period of two years from its date of issue, except for non-payment of premiums."

■ The insured died May 5, 1950, which was less than one year after the is-

suance of the policies. Therefore, as the policies had not been in force for a period of two years "during the lifetime of the Insured," the incontestable clause never became or could become effective. Greenbaum v. Columbian Nat. Life Ins. Co. of Boston, Mass., 2 Cir., 62 F.2d 56; Ætna Life Ins. Co. v. Kennedy, 8 Cir., 31 F.2d 971; Sun Life Assurance Company of Canada v. Allen, 270 Mich. 272, 282, 283, 259 N.W. 281. The situation is the same as if there were no incontestable clause in the policies. The plaintiff company would always have the right to assert its claim of fraud and misrepresentation in the procurement of the policies in defense of any action at law by the beneficiary, regardless of how long she delayed bringing such an action.

■ The present case, and like cases, in which the incontestable clause could never become effective because the policy had not been in force for the specified period "during the lifetime of the Insured," must be distinguished from those involving a policy which will become incontestable upon the expiration of a specified period from its date of issue. The authorities recognize that under this latter form of incontestable clause the insurer could be deprived of its defense of misrepresentation and fraud in the procurement of the policy, by the beneficiary's delaying suit, or dismissing a suit already begun, or avoiding a trial on the merits, until the period creating incontestability had expired. Therefore, where a policy contained such a provision, it was necessary for the company to seek cancellation in an equity action in order to protect itself against the policy's becoming incontestable merely by lapse of time. American Life Insurance Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605; Ruhlin v. New York Life Ins. Co., 3 Cir., 93 F.2d 416; New York Life Ins. Co. v. Panagiotopoulos, 1 Cir., 80 F.2d 136; New York Life Ins. Co. v. Seymour, 6 Cir., 45 F.2d 47, 73 A.L.R. 1523; Lincoln Nat. Life Ins. Co. of Fort Wayne, Ind. v. Hammer, 8 Cir., 41 F.2d 12.

However, the situation which justified an equity action by the insurer for cancel-

lation of the policies in the above-cited and similar cases, in order to protect itself against the policy's becoming incontestable by lapse of time, does not exist in the present case, in which the incontestable clause can never become effective. As the insured died within the specified two-year period, the insurer's obligation under the policies was thereby matured and became a debt due to the beneficiary, subject to whatever defense the insurer could interpose.

At this point it must be noted that the beneficiary, Evelyn J. Kielhorn, defendant in the present case, since filing her motion to dismiss, has begun a law action in this court against the insurer on the two policies in question, being Civil Action No. 1744. It is obvious that her purpose in moving to dismiss the present suit and in beginning her action at law is to obtain a jury trial of the issues involved.

■ It has been held that an insurance company may maintain an equity action in the State courts of Michigan for cancellation or rescission of an insurance policy on the ground of fraud in its procurement. Sun Life Assurance Company of Canada v. Aʹlen, 270 Mich. 272, 259 N.W. 281; National Fire Insurance Co. v. York, 251 Mich. 83, 231 N.W. 91; Mactavish v. Kent Circuit Judge, 122 Mich. 242, 80 N.W. 1086. Therefore, the plaintiff contends that it is entitled to maintain its present equity action because, under the holding in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the rule established by these Michigan decisions must be recognized and applied in this Federal court suit. On the other hand, the defendant, while recognizing that under the Erie Case a Federal court should follow the substantive law of the State in determining the rights and duties of the parties, nevertheless, contends that the

method or means for determining the rights and duties is procedural or adjective law and that a Federal court is not bound by the State procedural or adjective law.

In construing section 34 of the Federal Judiciary Act of 1789, 28 U.S.C., 1940 Ed. § 725,[1] the Supreme Court held in the Erie Railroad Case that in a Federal court diversity-of-citizenship action, the question of the railroad's liability for injury to a pedestrian caused by the alleged negligent operation of its train should be determined in accordance with the established substantive law of the State of Pennsylvania. There was no holding, or even an intimation, that the Federal court was required to follow the procedural or adjective law of Pennsylvania in determining the rights of the parties.

Both parties in the present case cite and rely upon the majority opinion in Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, which held that the Federal court in a diversity action was required to apply the State statute of limitations which would govern in a similar suit in the State court—that is, the Federal court should determine the rights of the parties and the result of the litigation in accordance with the substantive law of the State. In considering the extent to which a Federal court is bound by State law, Justice Frankfurter, writing the majority opinion, said at 326 U.S. at pages 105–112, 65 S.Ct. at pages 1468–1471, 89 L.Ed. 2079.

"In giving federal courts 'cognizance' of equity suits in cases of diversity jurisdiction, Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law or to create substantive rights denied by State law.

"This does not mean that whatever equitable remedy is available in a State

1. "Sec. 34. The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

In this section as amended by Act of Congress on June 25, 1948, 62 Stat. 944, 28 U.S.C. 1946 Ed., Supp. III, § 1652, subsequent to the adoption of the Federal Rules of Civil Procedure, the words "civil actions" were substituted for the words "trials at common law".

court must be available in a diversity suit in a federal court, or conversely, that a federal court may not afford an equitable remedy not available in a State court. Equitable relief in a federal court is of course subject to restrictions: the suit must be within the traditional scope of equity as historically evolved in the English Court of ·Chancery, * * * a plain, adequate and complete remedy at law must be wanting, * * * explicit Congressional curtailment of equity powers must be respected, * * * the. constitutional right to trial by jury cannot be evaded, * * *. State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts. * * * Whatever contradiction or confusion may be produced by a medley of judicial phrases severed from their environment, the body of adjudications concerning equitable relief in diversity cases leaves no doubt that the federal courts enforced State-created substantive rights if the mode of proceeding and remedy were consonant with the traditional body of equitable remedies, practice and procedure * * *.

"Here we are dealing with a right to recover derived not from the United States but from one of the States. When, because the plaintiff happens to be a non-resident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic. * * *

"And so the question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?

"It is therefore immaterial whether statutes of limitation are characterized either as 'substantive' or 'procedural' in State court opinions in any use of those terms unrelated to the specific issue before us. Erie R. Co. v. Tompkins was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result. * * *

"The source of substantive rights enforced by a federal court under its diversity jurisdiction, it cannot be said too often, is the law of the States."

■ Study of the Federal Rules of Civil Procedure, 28 U.S.C.A., the Erie Railroad and Guaranty Trust Cases, and other authorities clearly indicates that a Federal court in a diversity action should recognize and follow the substantive law of the State but is not required to follow the State's procedural or adjective law. Black's Law Dictionary, 3d Ed., defines substantive and adjective law as follows:

"Substantive law. That part of the law which the courts are established to administer, as opposed to the rules according to which the substantive law itself is administered. That part of the law which creates, defines, and regulates rights, as opposed to adjective or remedial law, which prescribes the method of enforcing rights or obtaining redress for their invasion."

"Adjective law. The aggregate of rules of procedure or practice. As opposed to

that body of law which the courts are established to administer, (called 'substantive law',) it means the rules according to which the substantive law is administered. That part of the law which provides a method for enforcing or maintaining rights, or obtaining redress for their invasion."

■ The Federal Rules of Civil Procedure became effective September 16, 1938. In the enabling act empowering the Supreme Court to prescribe the rules, Act of June 19, 1934, 28 U.S.C., 1946 Ed., §§ 723b, 723c, superseded by 28 U.S.C. § 2072, new Judicial Code, the Congress expressly provided that the rules "shall neither abridge, enlarge nor modify the *substantive* rights of any litigant." The Congress thus recognized the distinction between substantive law, which creates and defines the rights and duties of litigants, and the procedural or adjective law, which prescribes the court practice, means or method for administering the substantive law. 1 C.J.S., Adjective Law, p. 1468; 52 C.J.S., Law, p. 1026.

■ Under the holding in Guaranty Trust Co. v. York, supra, 326 U.S. at page 109, 65 S.Ct. at page 1470, 89 L.Ed. 2079, the following test should be applied in determining whether or not a Federal court in a diversity suit should follow a State law: If the law does "significantly affect the result of a litigation" and "the outcome of the litigation," it constitutes the substantive law of the State and should be followed. However, if it "concerns merely the manner and the means" by which the rights of the parties are determined, it is the procedural or adjective law of the State and need not be followed. In Sibbach v. Wilson & Co., Inc., 312 U.S. 1, at page 14, 61 S.Ct. 422, at page 426, 85 L.Ed. 479, the court said: "The test must be whether a rule really regulates procedure, —the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them."

See also Hofheimer v. McIntee, 7 Cir., 179 F.2d 789; Bohn v. American Export Lines, Inc., D.C., 42 F.Supp. 228.

■ The "result" or "outcome" of the present litigation between the beneficiary and the insurer would be a determination of the issue as to whether the beneficiary is entitled to recover on the policies in view of the insured's alleged fraud in their procurement. Under the holdings in the Erie Railroad and Guaranty Trust Cases and the provisions of 28 U.S.C.A. § 1652, the established substantive law of Michigan should be applied in determining the result or outcome of the litigation—that is, whether or not the beneficiary is entitled to recover on the policies. Northwestern Nat. Life Ins. Co. v. Nalbant, 6 Cir., 119 F.2d 725. However, the manner or means or method of court procedure used in determining the ultimate result or outcome of the litigation is merely a procedural matter, and a Federal court in a diversity action is not required to follow State court procedure.[2]

■ The fact that Michigan courts have permitted an insurance company to maintain an equity action for cancellation of an insurance policy because of fraud in its procurement does not bind a Federal court to follow that method or means of procedure in determining the rights of the parties in the present litigation. The rule has long been recognized that an insurer may not maintain an equity action in a Federal court for cancellation of an insurance policy on the ground of fraud in its procurement, where the insurer has available a complete and adequate remedy at law—that is, where it may assert its claim of fraud in the procurement of the policy in defense of a law action by the beneficiary on the policy. Whether the insurer should be permitted to assert the alleged fraud in the present equity action as a basis for cancellation of its policies or whether it should assert the alleged fraud as a defense in the pending law action by the beneficiary is purely a procedural question and relates only to the method and means to be used in determin-

2. Authorities to the contrary: Danville Building Ass'n of Danville, Ill. v. Gates, D.C., 66 F.Supp. 706; Ross v. Service Lines, Inc., D.C., 31 F.Supp. 871.

ing the rights of the parties and the ultimate result or outcome of the litigation.

The following authorities cited by the plaintiff involved questions of substantive law and merely held in effect that a Federal court in a diversity action should follow the substantive law of the State. In Northwestern Nat. Life Ins. Co. v. Nalbant, 6 Cir., 119 F.2d 725, the appellate court held that the Michigan law as established by the State court's construction of Comp.Laws Mich. 1929, § 12444,[3] should govern the result or decision in the diversity suit in Federal court. In Stimson v. Tarrant, 9 Cir., 132 F.2d 363, the court held that the question as to whether a lessor was entitled to cancel a Minnesota oil lease was to be determined by Minnesota law. In General Industries Co. v. 20 Wacker Drive Bldg. Corporation, 7 Cir., 156 F.2d 474, it was held that the Federal court should follow the law of Illinois in determining whether or not the plaintiff was entitled to maintain an action to enjoin the General Finance Corporation from changing its corporate name to General Industries Corporation. In Bruun v. Hanson, 9 Cir., 103 F.2d 685, the court held that the local State law was binding in determining the rights of the parties in an equity action. In Toner v. Sobelman, D.C., 86 F. Supp. 369, the court held that in a diversity action the substantive law of the State must be applied in determining the admissibility of evidence in an accounting proceeding. The foregoing authorities relied upon by plaintiff merely support the rule that the substantive law of a State should be applied in a diversity action in Federal court in determining the rights of the parties and the result or outcome of the litigation. They do not hold that a Federal court is bound by the procedural or adjective law of the State. In Connecticut General Life Ins. Co. of Hartford, Conn. v. McClellan, 6 Cir., 94 F.2d 445, the company began suit against the insured to cancel the total and permanent disability provisions in an insurance policy, on the ground of fraud in the application for the policy. The insured moved to dismiss on the ground that the incontestable clause was a bar to an action to cancel the disability provisions. The court was required to construe the incontestable clause and held that it was not ambiguous and that the company could maintain the action for cancellation. No question as to the applicability of State law or as to the plaintiff's having an adequate remedy at law was involved in this case. In Jamerson v. Alliance Ins. Co. of Philadelphia, 7 Cir., 87 F.2d 253, ten corporate fire insurance companies joined as plaintiffs in an equity proceeding against the defendant for cancellation of eleven insurance policies on the ground of fraud in their procurement, and for an injunction restraining the prosecution by the defendant of eleven separate suits upon the policies in a city court. In affirming the District Court's decree canceling the policies and permanently enjoining prosecution of the eleven suits, the court said 87 F.2d at page 256:

"It is axiomatic that equitable jurisdiction exists to cancel insurance policies, even after loss, where, *because of special circumstances, the remedy at law is inadequate.* * * * The controversy here is narrowed to whether the suggested remedy at law by way of defense to the separate legal actions in the state court was full, adequate and complete. * * *

"On the question of adequacy of remedy by way of defense to the separate actions at law, the District Court considered and discussed the relevant subjects of the multiplicity and character of the suits at law, apportionment of loss, proportional liability, and accounting, and it held that the remedy at law was not adequate. * * * We are in accord with that ruling."

The real issue raised by the defendant's motion to dismiss is not as to the ultimate result or outcome of the litigation, but only

3. "The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." Comp.Laws Mich.1929, § 12444.

as to whether or not she may have a jury determination of the factual issues which will be presented by the evidence adduced at a trial on the merits. In the present litigation between the insurer and the beneficiary, involving the beneficiary's right to recover under the two policies in question, there is no justification for assuming that the result or outcome of the litigation would be substantially different if the rights of the parties were determined by jury trial of the pending action at law than if determined by the court in the pending equity action. Amendment Seven to the Constitution of the United States provides that the right of trial by jury in suits at common law shall be preserved. Rule 38 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that the right of trial by jury as declared by the Seventh Amendment shall be preserved to the parties inviolate.

As the policies have matured and will never become incontestable, the insurer may with equal force assert its claim of fraud and misrepresentation as a defense in the pending law action, or in any subsequent law action begun by the beneficiary. Its right to assert its claim of fraud and misrepresentation in any law action constitutes a complete and adequate remedy at law. In Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 137 F.2d 62, the beneficiary in policies of life insurance issued by the defendant company began suit on the policies in a New Jersey State court. The case was removed to the United States court, and the defendant filed answer and counterclaim, asking for cancellation and rescission of the policies because of the alleged fraud of the insured in obtaining them. The plaintiff filed a demand for jury trial and also moved to dismiss the defendant's counterclaim on the ground that it had an adequate remedy at law in that it could assert its claim of fraud as a defense in the law action. In holding that the defendant was not entitled to have the issue of fraud determined by the court in an equity proceeding because it had an adequate and complete remedy at law, the court said 137 F.2d at pages 64 and 65:

"The practical result of the determination of the present issue is whether the plaintiffs are to have a jury trial, or whether the defendant may have the fraud issue tried by the judge. In conflict of laws cases the question whether an issue of fact is to be tried by a court or by a jury is considered one of procedure, and governed by the internal law of the forum. Restatement, Conflict of Laws (1934) § 594; 3 Beale, The Conflict of Laws (1935) § 594.1. The analogy is persuasive, though perhaps not necessarily conclusive, when the question is the enforcement in federal courts of rights arising under state law. Well considered federal decisions have held that the division of function between court and jury in a federal court is to be made by federal, not state law. Diederich v. American News Co., 10 Cir., 1942, 128 F.2d 144; Hollingsworth v. General Petroleum Corporation of California, D.C.Or. 1939, 26 F.Supp. 917. Contra: Ross v. Service Lines, Inc., D.C.E.D.Ill. 1940, 31 F.Supp. 871; Beagle v. Northern Pac. R. Co., D.C.W.D.Wash. 1940, 32 F.Supp. 17. This case is another of the instances in which a litigant, in federal court because of diversity of citizenship, has his rights determined by state law, but obtains them by the procedure available in all federal courts. * * *

"Having concluded that the rule of Erie R. Co. v. Tompkins does not affect the procedure in the pending case, the final question is whether the defendant is entitled to have its counterclaim tried by the court, as though the judge was sitting in equity, before the present rules, or whether the plaintiffs are entitled to have the issue tried by a jury. Although under the Federal Rules of Civil Procedure claims and defenses formerly cognizable either at law or equity have been merged into one action, a civil action, the rules have neither enlarged nor diminished the right to either a jury or court trial. Basic issues formerly triable as of right by a jury are still triable by a jury as a matter of right. Rule 38, 28 U.S.C.A. following section 723c. The same obtains where the right previously existed to have an issue tried

by the court. We must then inquire whether prior to the adoption of the Federal Rules of Civil Procedure a defense of 'equitable' fraud to an action for the proceeds of a life insurance policy was within the exclusive jurisdiction of equity. If it was, then there is no right to the jury trial demanded and defendant's contention that the matter raised in the counterclaim should be tried by the court must be sustained, not because of Erie R. Co. v. Tompkins, but because that is the federal court law on the subject.

"We turn then to the federal decisions. The general rule pronounced by the Supreme Court is that in insurance cases, in the absence of special circumstances, which are not present here, 'fraud in the procurement of insurance is provable as a defense in an action at law upon the policy, resort to equity being unnecessary to render that defense available.' American Life Ins. Co. v. Stewart, 1937, 300 U.S. 203, 212, 57 S.Ct. 377, 379, 81 L.Ed. 605, 111 A.L.R. 1268, citing Enelow v. New York Life Ins. Co., 1935, 293 U.S. 379, 385, 55 S.Ct. 310, 79 L.Ed. 440; Adamos v. New York Life Ins. Co., 1935, 293 U.S. 386, 55 S.Ct. 315, 79 L.Ed. 444; Insurance Co. v. Bailey, 1872, 13 Wall. 616, 20 L.Ed. 501; Cable v. United States Life Ins. Co., 1903, 191 U.S. 288, 306, 24 S.Ct. 74, 48 L.Ed. 188."

In Ætna Life Ins. Co. v. Kennedy, 8 Cir., 31 F.2d 971, 972, the court said:

"As this insured died within a year after this policy came into force, the incontestable clause never became or could become effective, either under the policy or under the statute. Therefore, the ground for cancellation, set forth in this amended complaint, would not be barred as a defense to a suit on this policy, even though such suit might not be brought until more than two years after the policy became effective. With this ample and adequate remedy at law existing, there is no basis for equitable jurisdiction. The court was right in dismissing the amended complaint. * * * Such dismissal is without prejudice to appellant to avail itself of its rights in any action brought against it upon the above policy."

New York Life Ins. Co. v. Seymour, 6 Cir., 45 F.2d 47, 73 A.L.R. 1523, involved a policy which provided that after two years it would be incontestable except for nonpayment of premiums. It should be noted that the incontestable clause did not provide, as do the two policies in the present case, that the contestable period of two years should be during the lifetime of the insured. The court held that the plaintiff could maintain an equitable action for cancellation of the policy for the reason that under the terms of the incontestable clause the beneficiary could delay a law action until the expiration of the contestable period and thereby deprive the insurer of an adequate remedy at law. However, Judge Denison stated, 45 F.2d at page 48: "Upon the authority of Phoenix Mut. L. Insurance Co. v. Bailey, 13 Wall. 616, 20 L.Ed. 501, and Cable v. [U. S. Life] Insurance Co., 191 U.S. [288], 289, 24 S.Ct. 74, 48 L.Ed. 188, it must be held that, except for the presence of the incontestable clause in such policy, a court of equity would not have the right to assume and try the issue whether the policy was fraudulently procured. The opinions in these cases are rested mainly upon the plaintiff's right to try before a jury such a question of fraud."

In Brown v. Pacific Mut. Life Ins. Co., 4 Cir., 62 F.2d 711, at pages 712, 714, in considering a policy containing a two-year incontestable clause, the court said:

"The general rule, of course, is that equity will not ordinarily take jurisdiction of a suit for cancellation of a policy of insurance for fraud in its procurement, for the reason that the company has an adequate remedy at law in its right to defend on the ground of fraud in an action instituted on the policies. * * * But where the policy contains an incontestable clause, so that if it be not canceled for fraud within the time limited the right to defend on that ground will be lost, equity will grant relief, as otherwise the company woud be without remedy. * * *

"* * * It is therefore a well-settled doctrine that in cases of this kind, where the primary rights of both parties are legal, * * * equity will not interfere to restrain the action or judgment at law,

provided the legal remedy will be adequate; that is, provided the judgment at law will do full justice between the parties, and will afford a complete relief; the adequacy or inadequacy of the legal remedy is the sole and universal test."

■ As the insured in the present litigation died before the expiration of the two-year contestable period, the obligation on the insurer to pay became fixed by the terms of the policies, and the amount due under the policies became a purely legal demand, subject, of course, to the insurer's right to assert its claim of fraud and misrepresentation in any suit on the policies. In Pacific Mut. Life Ins. Co. of California v. Parker, 4 Cir., 71 F.2d 872, 874, the court said: "The general rule, which has been long established, is that, after the right to recover on a policy of insurance has matured, equity will not ordinarily take jurisdiction of a suit to cancel it on the ground of fraud, and this for the reason that the company has an adequate remedy at law in its right to defend on that ground any action which may be instituted on the policy. Phoenix Mutual Life Ins. Co. v. Bailey, 13 Wall. 616, 622, 20 L.Ed. 501; Cable v. U. S. Life Ins. Co., 191 U.S. 288, 24 S.Ct. 74, 48 L.Ed. 188. The rule laid down in the first of these cases and quoted with approval in the other is as follows: 'By the death of the cestui que vie the obligation to pay, as expressed in the policies, became fixed and absolute, subject only to the condition to give notice and furnish proof of that event within ninety days. Notice having been given and the required proof furnished, the obligation to pay certainly became fixed by the terms of the policies and the sums insured became a purely legal demand, and if so, it is difficult to see what remedy, more nearly perfect and complete, the appellants can have than is afforded them by their right to make defence at law, which secures to them the right of trial by jury. Where a party, if his theory of the controversy is correct, has a good defence at law to "a purely legal demand," he should be left to that means of defence, as he has no occasion to resort to a court of equity for relief, unless he is prepared to allege and prove some special circumstances to show that he may suffer irreparable injury if he is denied a preventive remedy.'"

See also Enelow v. New York Life Insurance Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440; Adamos v. New York Life Insurance Co., 293 U.S. 386, 55 S.Ct. 315, 79 L.Ed. 444; New York Life Ins. Co. v. Panagiotopoulos, 1 Cir., 80 F.2d 136; Pacific Mut. Life Ins. Co. of California v. Andrews, 8 Cir., 77 F.2d 692; New York Life Ins. Co. v. Miller, 8 Cir., 73 F.2d 350, 97 A.L.R. 562.

The factual situations in this case and in Ettelson v. Metropolitan Life Ins. Co., supra, and Ætna Life Ins. Co. v. Kennedy, supra, readily distinguish them from the case of Ruhlin v. New York Life Ins. Co., 3 Cir., 93 F.2d 416, in which the court held that the insurer could proceed in equity for the cancellation of the double indemnity and disability provisions of a policy, on the ground, among others, that the insurer did not have a complete and adequate remedy at law because a jury verdict on the issue of fraud would not bind the beneficiaries who were not parties to the suit.

■ The pleadings in the present case disclose no unusual facts or circumstances justifying equity jurisdiction. The pending law action by the beneficiary can undoubtedly be reached for trial by jury as promptly as the insurer's equity action could be reached for trial by the court; the interested and necessary parties are all before the court; there is no showing that witnesses may disappear or that evidence may be lost. There is no claim that the remedy at law is inadequate or that the ends of justice will not be satisfied by a verdict and judgment in the law action. As the plaintiff herein may assert its claim of fraud in the procurement of the policies with equal force in the beneficiary's pending law action in this court, or in any other action which she may begin, it is clear that the insurer has an adequate and complete remedy at law, and, having such a remedy, there is no basis for equitable jurisdiction. The court concludes that the plaintiff company is not entitled to maintain the present equity action.

For the reasons stated herein, the defendant's motion to dismiss is granted, but without prejudice to the right of the plaintiff company to assert its claim of fraud and misrepresentation in the procurement of the policies in defense of the beneficiary's pending law action, or in defense of any other law action which she may institute. An order will be entered accordingly. No costs are allowed on this motion.