# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

**September 17, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| JOHN L. GOODWIN, III, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | Sumner Chancery |
| | ) | No. 95C-88 |
| VS. | ) | |
| | ) | Appeal No. |
| | ) | 01A01-9509-CH-00423 |
| HENDERSONVILLE POLICE DEPT., | ) | |
| DAVID L. KEY, Police Chief, and | ) | |
| R.J. (HANK) THOMPSON, Mayor, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

## APPEAL FROM THE CHANCERY COURT FOR SUMNER COUNTY
## AT GALLATIN, TENNESSEE

### THE HONORABLE TOM E. GRAY, CHANCELLOR

For the Plaintiff/Appellant:

John L. Goodwin, III
Pro Se

For the Defendants/Appellees:

John R. Bradley
Hendersonville, Tennessee

## APPEAL DISMISSED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal concerns the efforts of a state prisoner to obtain access to the police investigative files relating to his convictions. The prisoner filed suit against the Hendersonville Police Department in the Circuit Court for Sumner County seeking access to the department's investigative files on the grounds they contained exculpatory evidence that had been withheld during his criminal prosecution. The police department responded by asserting that criminal proceedings involving the prisoner were still open because his case had been remanded for resentencing and that the prisoner did not have standing to seek relief under the Public Records Act. Based on the pleadings, the trial court determined that while the prisoner's prosecution was over, the prisoner was not entitled to relief under the Public Records Act. The prisoner has appealed. We have determined that we cannot reach the merits of this case because the prisoner's notice of appeal was untimely.

## I.

On December 12, 1989, John L. Goodwin was convicted in the Criminal Court for Sumner County of second degree burglary and assault with intent to commit rape. He received two consecutive eight-year sentences. He did not pursue a direct appeal from these convictions. However, he later filed a petition for post-conviction relief, alleging, among other things, that he was denied effective assistance of counsel when deciding whether to file a motion for new trial or to pursue a direct appeal. The criminal court denied post-conviction relief; however, on November 12, 1992, the Court of Criminal Appeals held that Mr. Goodwin should be afforded the right to file a motion for new trial and to perfect a delayed appeal.[1]

On April 12, 1995, Mr. Goodwin filed a pro se suit against the Hendersonville Police Department and others seeking access to the department's investigative files concerning his crimes. He asserted that these files contained exculpatory evidence that had been improperly withheld by the district attorney general during his 1989

---

[1]*State v. Goodwin*, App. No. 01C01-9108-CR-00242, 1992 WL 328725, at *3-4 (Tenn. Ct. App. Nov. 12, 1992) (No Tenn. R. App. P. 11 application filed).

trial. Eight days later, the Court of Criminal Appeals remanded Mr. Goodwin's case to the criminal court (1) to recalculate his sentence in the manner required by *State v. Pearson*, 858 S.W.2d 879 (Tenn. 1993), (2) to identify the enhancing factors applied to each conviction, and (3) to reconsider the issue of consecutive sentencing. *See State v. Goodwin*, 909 S.W.2d 35, 45-46 (Tenn. Crim. App. 1995).

On May 22, 1995, the local authorities moved to dismiss Mr. Goodwin's Public Records Act suit on the ground that Mr. Goodwin's criminal case was still open and, therefore, that he did not have a present right to examine the investigative files.[2] The trial court denied the motion to dismiss and directed the authorities to produce the files for the court's inspection. The trial court later announced that "[a] complete and thorough reading through the investigative file . . . revealed nothing exculpatory for plaintiff."

The local authorities filed a timely Tenn. R. Civ. P. 59 motion requesting the trial court to alter or amend its order because Mr. Goodwin's criminal prosecution was ongoing following the remand for resentencing by the Court of Criminal Appeals. For the first time, the local authorities also asserted that Mr. Goodwin lacked standing to invoke the Public Records Act because , as a convicted felon, he was not a "citizen" for the purpose of Tenn. Code Ann. § 10-7-503(a) (Supp. 1996). On July 11, 1995, the trial court filed a memorandum opinion and final order, finding that the criminal proceedings involving Mr. Goodwin were over even though the Court of Criminal Appeals had remanded the case for resentencing. However, the trial court dismissed Mr. Goodwin's complaint on the ground that he had lost his citizenship rights following his felony convictions and, therefore, he did not have standing the seek relief under the Public Records Act. Mr. Goodwin, still representing himself, then sought to appeal to this court. His noncompliance with the procedural rules for perfecting an appeal as of right to this court is outcome determinative.

## II.

---

[2]The police department was relying on *Appman v. Worthington*, 746 S.W.2d 165, 166-67 (Tenn. 1987) in which the Tennessee Supreme Court held that persons charged with crimes were not entitled to obtain access to police investigative files under the Public Records Act as long as there was a pending criminal prosecution.

Mr. Goodwin was incarcerated in the Lake County Regional Correctional Facility in Tiptonville when he filed this suit in April 1995. Several months later, the prison authorities moved him to the Riverbend Maximum Security Facility in Nashville. Mr. Goodwin informed the trial court clerk of his change of address on July 14, 1995. As it turned out, the trial court clerk had already mailed a copy of the trial court's memorandum opinion and final order to Mr. Goodwin by the time he received notice of his change of address. The move did not prevent Mr. Goodwin from receiving the copies of the memorandum opinion and final order. On August 7, 1995, he mailed his notice of appeal and designation of the appellate record to the trial court clerk. The trial court clerk received and filed Mr. Goodwin's notice of appeal on August 11, 1995 - thirty-one days after the entry of the trial court's final order.

## A.

The local authorities moved to dismiss Mr. Goodwin's appeal on the ground that he had failed to file his notice of appeal with the trial court clerk within thirty days as required by Tenn. R. App. P. 4(a). We previously declined to dismiss Mr. Goodwin's appeal, but the local authorities have pressed us to reconsider this issue. We have an obligation to return to this question because an appellant's compliance with Tenn. R. App. P. 4(a) is a necessary prerequisite to our appellate jurisdiction. *See Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181, 184 (Tenn. Ct. App. 1985). Appellate courts have the inherent power to revisit the issue of their jurisdiction, and so our previous refusal to dismiss this appeal does not prevent us from giving additional consideration to this question. We must remain free to set aside an erroneous order relating to our subject matter jurisdiction.

Whether we have subject matter jurisdiction over this appeal turns on an extremely narrow procedural point. The procedural rules, however, regulate the order and method by which things must be done. It provides the travelable avenue for arriving at the application of the substantive law. *See Occidental Life Ins. Co. of Calif. v. Kielhorn*, 98 F. Supp. 288, 292-93 (W.D. Mich. 1951); *Allen v. Fisher*, 574 P.2d 1314, 1315 (Ariz. Ct. App. 1977). As Professor Llewellyn put it, "[P]rocedural

regulations are the door, and the only door, to make real what is laid down by substantive law." Karl Llewellyn, The Bramble Bush 9 (1960).

The Tennessee Rules of Appellate Procedure set out the basic rules governing appeals to this court. Whether Mr. Goodwin invoked the subject matter jurisdiction of this court depends upon his adherence to these rules. Tenn. R. App. P. 1 counsels us to construe the appellate rules to secure justice on the merits, and accordingly, we may use our power under Tenn. R. App. P. 2 to suspend the normal operation of many of the appellate rules for good cause. However, our power to suspend the appellate rules is not without limits. Both Tenn. R. App. P. 2 and Tenn. R. App. P. 21(b) expressly provide that this court cannot – even in the interest of reviewing a case on the merits – suspend the requirement in Tenn. R. App. P. 4(a) that notices of appeal in civil cases must be received and filed by the trial court clerk within thirty days after the date of the entry of the judgment appealed from. *John Barb, Inc. v. Underwriters at Lloyds of London*, 653 S.W.2d 422, 424 (Tenn. Ct. App. 1983).

Mr. Goodwin's certificate of service shows that he mailed his notice of appeal from Riverbend Maximum Security Facility on August 7, 1995. However, under Tenn. R. App. P. 4(a), filing with the clerk means actual delivery of papers to the clerk and not just mailing of papers to the clerk. *See Lambert v. Home Fed. Sav. & Loan Ass'n*, 481 S.W.2d 770, 773 (Tenn. 1972). Regardless of when Mr. Goodwin mailed his notice of appeal, it was received and filed by the trial court clerk on August 11, 1995 – thirty-one days after the entry of the judgment appealed from. Thus, Mr. Goodwin's notice of appeal was received by and filed with the trial court clerk one day late.

In order to dissuade us from dismissing his appeal as untimely, Mr. Goodwin cites and relies on Tenn. R. App. P. 20(a) which provides that for incarcerated pro se inmates, "filing shall be timely if the papers are delivered to the appropriate individual at the correctional facility within the time fixed for filing." However, Tenn. R. App. P. 20(a) also states that it applies only to "[p]apers required or permitted to be filed in the appellate court." It does not, by its own terms, apply to papers that must be filed in the trial court. Because Tenn. R. App. P. 4(a) requires timely filing of the notice of appeal in the trial court, the special relief accorded to

incarcerated persons in Tenn. R. App. P. 20(a) has no application. In addition, Tenn. R. App. P. 4(a) makes no special exception for incarcerated persons.

## B.

The United States Supreme Court confronted a similar procedural issue nine years ago in *Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379 (1988), a case arising out of the United States District Court for the Western District of Tennessee. In that case, the district court had dismissed a Tennessee prisoner's pro se petition for a writ of habeas corpus. The prisoner filed his notice of appeal thirty-one days after the entry of the district court's order – one day after the expiration of the thirty day period for filing a notice of appeal under Fed. R. App. P. 4(a). The United States Court of Appeals for the Sixth Circuit dismissed the appeal on the ground that it was untimely. The United States Supreme Court, by a five to four vote, reversed. While the majority noted that granting pro se prisoners relief was a departure from the general requirement of Fed. R. App. P. 4(a) in civil cases, it determined that pro se prisoners should be excused from the strict requirement of Fed. R. App. P. 4(a) if they delivered their notice of appeal to prison authorities for filing with the district court within thirty days after the entry of an appealable judgment or order. *Houston v. Lack*, 487 U.S. at 273, 108 S. Ct. at 2383.

The dissenting justices asserted that the court's decision to equate an incarcerated pro se litigant's filing date with the date the litigant delivers the notice of appeal to correctional authorities went over "the line between textual construction and textual enactment." *Houston v. Lack*, 487 U.S. at 277, 108 S. Ct. at 2385 (Scalia, J., dissenting). They maintained that the courts should construe crucial phrases in procedural rules consistently and opposed creating a special exception to Fed. R. App. P. 4(a) for incarcerated pro se litigants. As they put it,

> Rules of procedure are a necessary part of an orderly system of justice. Their efficacy, however, depends upon the willingness of the courts to enforce them according to their terms. Changes in rules whose inflexibility has turned out to work hardship should be effected by the process of amendment, not by *ad hoc* relaxations by this Court in particular cases. Such dispensations in the long run actually produce mischievous results, undermining the

certainty of the rules and causing confusion among the lower courts and the bar (citation omitted).

*Houston v. Lack*, 487 U.S. at 283, 108 S. Ct. at 2389 (Scalia, J., dissenting).

The dissenting justices also pointed out that the Court had the power to revise the Federal Rules of Appellate Procedure to reach the same result and suggested that the Court should have followed that route instead of amending the appellate rules by case law decision. *Houston v. Lack*, 487 U.S. at 284, 108 S. Ct. at 2389 (Scalia, J., dissenting). In 1993 the Court amended the Fed. R. App. P. 4 and 25 to conform with its holding in *Houston v. Lack*. *See* 9 James W. Moore et al., Moore's Federal Practice ¶¶ 204.21 & 225.01[8] (2d ed. 1996). As we read *Houston v. Lack* and the Federal Rules of Appellate Procedure, were Mr. Goodwin in the federal courts, his notice of appeal would be considered timely.

## C.

The Tennessee Rules of Appellate Procedure are not identical to the Federal Rules of Appellate Procedure. *See* Tenn. R. App. P. 1, advisory comm'n com.. In January 1993, the Tennessee Supreme Court partially followed the United States Supreme Court's lead when it amended Tenn. R. App. P. 20(a) to provide that papers prepared by or on behalf of incarcerated pro se litigants would be deemed to be timely filed in the appellate court if they were delivered to the appropriate individual at the correctional facility within the time fixed for filing. *See* Re Amendments to the Tennessee Rules of Appellate Procedure - Rules 12, 20, and 39, Tenn. Decisions 842-46 S.W.2d XLIV and Tenn. Decisions 847-52 S.W.2d LI. The Tennessee Supreme Court's revision of Tenn. R. App. P. 20(a) mirrored the United States Supreme Court's earlier textual revision of Fed. R. App. P. 25(a). However, for whatever reason, the Tennessee Supreme Court did not make corresponding revisions to Tenn. R. App. P. 4(a) dealing with the filing of notices of appeal in the trial court. Thus, Tenn. R. App. P. 4(a) contains no special provision for the filing of appeal notices by incarcerated pro se litigants in the trial courts similar to the provision in Tenn. R. App. P. 20(a) dealing with filings in the appellate courts.

Notwithstanding the apparent incongruity between Tenn. R. App. P. 4(a) and Tenn. R. App. P. 20(a), these rules bind this court and we must follow them. *See*

*State v. Hodges*, 815 S.W.2d 151, 155 (Tenn. 1991).  This court may not presume to derogate, disregard, or modify Tenn. R. App. P. 4(a).  The power to amend the Tennessee Rules of Appellate Procedure belongs not to this court but to the Tennessee Supreme Court.  Accordingly, we conclude that Mr. Goodwin's appeal must be dismissed because his notice of appeal was not filed with and received by the trial court clerk within the time required by Tenn. R. App. P. 4(a).  If Mr. Goodwin desires to seek relief from the plain and mandatory requirements of Tenn. R. App. P. 4(a), he must obtain it from the Tennessee Supreme Court.

## III.

We recognize that Mr. Goodwin is representing himself in this proceeding and that pro se litigants, like all other litigants, are entitled to fair and equal treatment in the courts.  While dismissing pro se litigants' cases on procedural technicalities is not favored, pro se litigants must act within the time periods provided in the applicable statutes and rules of procedure to have their cases considered.  *See Williams-Guice v. Board of Educ.*, 45 F.3d 161, 164 (7th Cir. 1995); *Kelley v. Secretary, Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).  We cannot, in an effort to treat a pro se litigant fairly, treat other litigants unfairly.

The record undisputably shows that Mr. Goodwin's notice of appeal was received by and filed with the trial court clerk one day late.  Because we do not possess the authority to waive Tenn. R. App. P. 4(a), we find that we have no jurisdiction to consider Mr. Goodwin's potentially meritorious substantive law argument concerning his standing to seek access to the contents of his investigative file under the Open Records Act.[3]  As Chief Justice Chase wrote over one hundred years ago, "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the Court is that of announcing the fact and dismissing the cause."  *See Ex parte McCardle*, 74 U.S. (7 Wall.), 506, 514 (1869).  Accordingly, we dismiss Mr. Goodwin's appeal and tax the costs of the appeal against him.

---

[3]The latest case in a long series of cases dating back to 1989 holding that convicted felons did not have standing to pursue records under the Public Records Act was this court's decision in *Cole v. Campbell,* App. No. 01A01-9603-CH-00140, 1996 WL 724920 (Tenn. Ct. App. Dec. 18, 1996).  The Tennessee Supreme Court granted Mr. Cole's application for permission to appeal on May 5, 1997, and the case is set for argument before the Tennessee Supreme Court on October 7, 1997.

_____

WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____

HENRY F. TODD, P.J., M.S.


_____

BEN H. CANTRELL, JUDGE